**Harlin J. WALL, Appellant,**

v.

**UNITED STATES of America.**

**No. 77–2512.**

United States Court of Appeals, Third Circuit.

Argued Nov. 17, 1978.
Decided Jan. 5, 1979.

---

David L. Ketter, Thomas C. Murcko, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, William A. Friedlander, Karl P. Fryzel, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee; S. John Cottone, U. S. Atty., Scranton, Pa., of counsel.

Before GIBBONS and WEIS, Circuit Judges and DUMBAULD, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This appeal requires us to unravel a procedural web in which the parties became hopelessly, and we find somewhat helplessly, entangled. We vacate the order dated August 29, 1977, granting the United States judgment notwithstanding the verdict and reinstate a final judgment entered on a verdict on special interrogatories and a stipulation as to amount, dated June 20, 1977. The result is to vacate a judgment entered in favor of the government for $179,752.06, the amount of the demand in its counterclaim, and to reinstate a judgment in favor of the government for $14,288.17, the amount which it stipulated was due under the jury's verdict on special interrogatories.

The plaintiff-appellant is Harlin J. Wall. On November 10, 1975, the Commissioner of Internal Revenue made an assessment against Wall, pursuant to §§ 6671 and 6672 of the Internal Revenue Code, 26 U.S.C. §§ 6671, 6672, for penalties in the amount of the tax which should have been withheld from the wages of employees of three corporations and paid over to the government. The assessments were as follows:

* Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation.

| Corporation | For quarter ending | Amount which should have been withheld and paid over |
|---|---|---|
| General Housing Industries, Inc. | September 30, 1972 | $ 50,399.12 |
| Con-Co., Inc. | June 30, 1972 | 67,045.32 |
| | September 30, 1972 | 40,599.10 |
| Highland Construction Corp. | June 30, 1972 | 12,890.84 |
| | September 30, 1972 | 8,817.68 |
| Total | | $179,752.06 |

Wall paid $500 in partial satisfaction of the assessment and made a timely claim for refund, which was denied on February 24, 1976. On June 1, 1976, he filed a suit in the district court for refund of the $500, in order to litigate his contentions (1) that during the quarters in question he was not a "person required to collect, truthfully account for, and pay over" withholding taxes for the named corporations, within the meaning of §§ 6671(b) and 6672, and (2) that he did not willfully fail to collect or account for such taxes.

Before the government was served with the complaint, the district court, *sua sponte* entered "Order # 1" fixing a pretrial conference date on January 4, 1977, a date for drawing a jury on January 5, 1977, and a date for completion of discovery on December 21, 1976. The court also entered, *sua sponte* "Order # 2", a twenty page document setting forth the practice and procedure governing the case.

The government filed an answer on August 3, 1976, and on a consent motion obtained leave to file a counterclaim and third-party complaint on September 23, 1976. The counterclaim sought to enforce the assessment against Wall. The third-party complaint was against Gene Gorrell, who was alleged to be liable to the United States for withheld taxes in the amount of $250,647.73 and, moreover, liable to the United States for any refund it might owe to Wall. The government attempted to serve Gorrell in West Virginia, but did not locate him. For this and other reasons it moved, on November 30, 1976, for an extension of the discovery period and a continuance of the scheduled pretrial conference and trial. That motion was denied on December 6, 1976. By the time of the sched-

uled pretrial conference, defendant Gorrell had not been located and served, and the government's motion to dismiss the third-party complaint without prejudice was granted. A jury was drawn as scheduled on January 5, 1977, and the trial commenced on February 17, 1977.

Wall offered testimony tending to show that he had a passive role in the businesses in question, and that the missing Mr. Gorrell was the officer responsible for withholding and paying taxes. The government offered no testimony, but cross-examined Wall's witnesses and introduced several exhibits in evidence. The case was submitted to the jury on special verdict interrogatories which the jury answered as follows:

1. Was the Plaintiff, Harlin J. Wall, a person responsible for collecting, truthfully accounting for, and paying over the income and Social Security taxes withheld from the wages of employees of Con-Co., Inc. and Highland Construction Corporation during the second calendar quarter of 1972? Answer: No.

4. Was the Plaintff, Harlin J. Wall, a person responsible for collecting, truthfully accounting for, and paying over the income and Social Security taxes withheld from the wages of employees of General Housing Industries, Inc., Con-Co., Inc. and Highland Construction Corporation during the third calendar quarter of 1972? Answer: Yes.

5. If your answer to the preceding question is "yes", was Mr. Wall's failure to collect, account for, and pay over the withheld taxes willful during the period July 1, 1972 to July 9, 1972? Answer: No.

6. If your answer to Question 4 is "yes", was Mr. Wall's failure to collect, account for, and pay over the withheld taxes willful during the period July 10, 1972 to August 9, 1972? Answer: No.

7. If your answer to Question 4 is "yes", was Mr. Wall's failure to collect, account for, and pay over the withheld taxes willful during the period August 10, 1972 to September 6, 1972? Answer: Yes.

8. If your answer to Question 4 is "yes", was Mr. Wall's failure to collect, account for, and pay over the withheld taxes willful during the period September 7, 1972 to September 30, 1972? Answer: Yes.

Thus, the jury found that Wall did not become a person responsible for collecting and accounting for withheld taxes until July 1, 1972, and that his failure to collect and account for such taxes was not willful prior to August 10, 1972.

Since no special verdict interrogatories were submitted as to the amounts which should have been withheld and paid over, no judgment could be entered on the verdict. The court, on February 23, 1977, entered an order:

1. If the parties can agree upon the amount of tax due [on the verdict], they shall certify the same to the Court by April 18, 1977 so that judgment in a monetary amount may be entered.

2. If the parties cannot agree by April 18, 1977 upon the amount of the tax due, they shall notify the Court and the case will be tried in Lewisburg, in June, 1977 as to the monetary amounts involved by the same jury.

On April 19, 1977, the court directed the Clerk to notify the jurors that the trial would reconvene in June, 1977. However, before the case was reached for completion of the trial, the following stipulation was filed:

Counsel for plaintiff and defendant in this action do hereby agree and stipulate that the amount of taxes (income and FICA) withheld by the subject corporations from the earnings paid to their employees from August 10, 1972 to September 30, 1972, and not paid over to the government is $24,326.51.

The plaintiff has made payments in the total amount of $11,998.00 to the defendant in partial satisfaction of the penalty assessments made against him. Therefore, the net amount of the judgment to be entered against plaintiff in accordance with the jury's verdict (including statutory interest to June 16, 1977) is $14,288.17.

It is thus agreed that the Court may enter judgment for the defendant in the amount of $14,288.17, plus interest after judgment as provided by law.

On June 20, 1977, the court directed entry of judgment in accordance with the stipulation, and on that same day a final judgment was entered in favor of the United States and against Wall in the amount of $14,-288.17 plus interest. There is nothing in the record amounting to a finding as to the amount due under the verdict. A judgment for any specific amount thus rests entirely upon the stipulation quoted above.

On June 29, 1977, the government *filed* a motion for judgment notwithstanding the verdict, asking that the court "set aside so much of the jury's verdict as was rendered in favor of the plaintiff and to enter judgment against the plaintiff and in favor of the defendant in the full amount of the defendant's counterclaim." The date of service of this motion does not appear of record. On June 28, 1977, as established in a proof of service filed in the cause, Wall served by mail a motion for a judgment notwithstanding the verdict or alternatively for a new trial. Although served by mail on June 28, 1977, and mailed to the district court the same day, this motion was not marked *filed* by the Clerk until July 1, 1977. Oddly, the proof of service, mailed to the Clerk on July 29, was also marked filed on July 1, 1977.

Neither the government's motion nor Wall's was ever listed for argument. On August 29, 1977, the district court, without informing either party of his intention to do so, ruled on both motions. The court held: (1) the government's motion for judgment notwithstanding the verdict, governed by the time limit in Fed.R.Civ.P. 50(b), was timely, because it was filed within ten days of the entry of the June 20, 1977 judgment; (2) Wall's motion for judgment notwithstanding the verdict, although served within ten days of the June 20, 1977 judgment, was not filed until the eleventh day, and was thus untimely; (3) Wall's motion for a new trial, governed by Fed.R.Civ.P. 59(b), was served within ten days of the entry of

the June 20, 1977 judgment, and since Rule 59(b) measures the time from service of the motion, the new trial motion was timely; (4) Wall's new trial motion would not be considered for reasons which we quote:

Under paragraph 3.6 of this Court's Order # 2 in the above-captioned case dated June 3, 1976, a brief in support of a post-trial motion is due within 60 days after the last day of the trial. The trial of the liability phase of this case ended on February 18, 1977 so that ordinarily Wall's brief would have been due on April 19, 1977. However, the need for the scheduled damage trial was obviated by a settlement; had that second proceeding taken place, the time for the filing of briefs would have extended to 60 days after the trial on damages ended. Judgment was entered June 20, 1977. The Court will interpret its Order to allow a party in this situation to treat the date of judgment as if it were the last day of the trial. Thus, the last day for the filing of Wall's brief on his motion for a new trial was Friday, August 19, 1977.

Paragraph 3.6 of the practice order provides that failure of a party to file a brief in support of his motion will result in a denial of the motion. Because Wall has failed to file a brief in support of his motion for a new trial, his motion for a new trial will be denied.

and (5) the government's motion for judgment notwithstanding the verdict was granted, for reasons which we quote:

Paragraph 3.7 of that same Order states that any party opposing any motion must file his responsive brief within 15 days after the filing of the movant's brief or be deemed to waive opposition to the motion, resulting in the granting of the motion. As of the date of this Order, Wall has not filed his brief in response to the United States' motion for judgment notwithstanding the verdict. Therefore, in accordance with paragraph 3.7 of Order No. 2 in the above captioned case dated June 3, 1976 the Court will grant the United States' motion and will order the Clerk to enter a judgment in favor of the United States in the amount of $179,-

752.06, the full amount of its counterclaim.

It is from the grant of the government's motion for judgment notwithstanding the verdict and the denial of his motion for a judgment notwithstanding the verdict or new trial that Wall appeals. While the United States actually opposed Wall's motion to the district court for reconsideration, its brief and argument on appeal are at best tepid in defending the procedural steps by which it achieved its probably unexpected total victory. The government does contend, however, that, although it may have triumphed for reasons which it does not strongly defend, the judgment in its favor was nevertheless proper.

Our analysis of the trial court's grant of the government's judgment notwithstanding the verdict motion must begin with the provision in Rule 50(b) that

[n]ot later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict . . . .

Until 1963 a Rule 50(b) motion had to be made within ten days of a verdict. In 1963, however, the rule was amended to conform to the time limit for making a new trial motion under Fed.R.Civ.P. 59(b). It is still the rule that a court is without power to enlarge the time for making a Rule 50(b) motion. Fed.R.Civ.P. 6(b). *See Johnson v. New York, N. H. & H. R. Co.*, 344 U.S. 48, 50, 73 S.Ct. 125, 97 L.Ed. 77 (1952); *Philhall Corp. v. United States*, 546 F.2d 210, 213 (6th Cir. 1976). But the government's motion was made within the time permitted by the rule, whether the time is measured from filing or from service. Thus, the district court properly considered it.

There are, however, significant substantive prerequisites to the consideration of such a judgment notwithstanding the verdict motion. It cannot be granted to a party who has failed to make a motion for a directed verdict. Nor may a party base a

motion for a judgment notwithstanding the verdict on a ground not advanced in his motion for a directed verdict. *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 846 n.17 (5th Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976). Some courts have predicated these limitations upon the second clause of the seventh amendment, which limits the manner in which jury verdicts may be reconsidered. *E. g., Mutual Benefit Health & Accident Ass'n v. Thomas*, 123 F.2d 353, 355 (8th Cir. 1941). A more pragmatic reason is that by insisting that a directed verdict motion be made before the jury retires, the court can permit a party to cure possibly technical defects in proof which might otherwise make his case legally insufficient. A motion for judgment notwithstanding the verdict made after trial, in the absence of prior notice of the alleged defect, comes too late for possibly curative action, short of a completely new trial. Thus, whether or not the Constitution compels the rule forbidding a party to advance by judgment notwithstanding the verdict motion a ground not first advanced in a motion for directed verdict, the rule is certainly consistent with the general spirit animating the Federal Rules of Civil Procedure. That spirit suggests avoidance of surprises and tactical victories at the expense of substantive interests.

■ The government did make a motion for a directed verdict as follows:

Mr. Lawler: Well then I make a motion, your Honor, that this Court enter a directed verdict in favor of the United States on the basis that the Plaintiff has not shown by competent evidence that Mr. Wall was not responsible nor willful with respect to the taxes involved in this case.

The Court: We will deny the motion. To put the motion in context, it must be realized that the court had already drawn up special verdict interrogatories designed solely to determine Wall's liability in each time period, and not the amount of taxes due or the amount of money available in each period for their payment. These latter questions were reserved for subsequent de-

termination only if Wall was held not to have established his lack of responsibility or lack of willfulness. Wall had no occasion to introduce evidence on whether, for example, in the period during which he might be found to be responsible and willful, the corporations had funds with which payment could have been made. Thus, the theory of the government's *directed verdict* motion was exclusively predicated on Wall's putative failure to establish his lack of responsibility or willfulness.

The government's motion for *judgment notwithstanding the verdict*, on the other hand, asserted that the grounds for the motion are set forth in an attached memorandum. In that memorandum the government, relying on *In re Slodov v. United States*, 552 F.2d 159 (6th Cir. 1977), a decision published after the verdict and reversed in *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), presented a theory never offered in its motion for a directed verdict. The government now contended that the jury's answers to the interrogatories, properly construed, supported a judgment for the full amount of the government's counterclaim. The government's theory, which it still advances, is that the jury's finding that as of August 10 Wall was both responsible for paying the taxes and willful in failing to do so confers liability on Wall for the full amount of past unpaid taxes, to the extent that funds were available on August 10 or thereafter. A responsible officer coming into possession or control of free corporate assets, according to *Slodov v. United States, supra*, may not pay them out to other creditors with knowledge of the government's withholding tax claim for a prior period. Since, the government argued, sufficient funds to cover all past unpaid taxes were available after August 10, Wall was liable for the full amount of the government's counterclaim. Thus, the argument concludes, the special verdict interrogatories, if appropriately construed as determining Wall's responsibility and willfulness as of August 10, support a judgment for the government's entire assessment.

There are, however, two difficulties with the government's ostensible judgment notwithstanding the verdict motion. First, it did not really seek to set aside the verdict at all; it merely sought a reinterpretation of the verdict. More critically, the theory advanced in the judgment notwithstanding the verdict motion was never pressed in the motion for a directed verdict. The government attorney may have been aware of the theory and simply assumed that an opportunity to press it would arise later if the case was reconvened in order to determine the amount due. He may, on the other hand, have been unaware. But, in any event, his failure to press the contention deprived Wall of the opportunity to offer testimony tending to show, for example, that any funds which came into the corporations' hands after August 10, 1972 were encumbered by valid security interests and were therefore unavailable to satisfy the government's assessment.

Moreover, the government's motion cannot be fairly construed as a motion for a new trial. Its memorandum in support of the motion for judgment notwithstanding the verdict makes it clear that it wants the special verdict interrogatories to stand, but to be applied in a manner favorable to it. No trial errors are urged, and no contention is made that the answers to the interrogatories are against the weight of the evidence. Thus the district court could not properly have granted relief under Rule 59 since no notice was given of any grounds which would support the grant of a new trial in an action at law.

■ What the government perhaps should have been seeking was relief under

Fed.R.Civ.P. 60(b). Until it made a stipulation for judgment, the case was still open and it could have tried and conceivably prevailed on its theory that Wall, though not responsible and willful prior to August 10, 1972, became liable for taxes withheld in the earlier periods because he permitted payments to creditors in the later period. But the stipulation and resulting judgment foreclosed that contention. Arguably the stipulation was improvident, and it is conceivable that had a motion been made for relief from judgment for mistake, inadvertence, surprise or excusable neglect, the court, after a hearing, might appropriately have granted such relief. But no such motion was made within a year after judgment, and no reason has been advanced to suggest that it should be considered at this late date.

■ Thus, the trial court granted a motion having no warrant in Rule 50(b), or in any other rule dealing with post-judgment relief, without ever addressing the merits of the request. The sole ground advanced for the grant of the motion is a draconian provision in an *sua sponte* order dealing with briefing on motions.[1] The net monetary sanction imposed for a late brief was $165,463.89. The court never, between June 29th when the government's motion was filed, and August 29th when it entered the order appealed from, suggested to counsel for Wall that a brief in opposition to the motion for judgment notwithstanding the verdict was required. Rule 50 imposed no such requirement. Moreover, even the text of paragraph 3.7 of Order # 2, quoted in the margin, gives no fair warning that it applies to post-judgment motions. That

1. 3.7 *Submission of Briefs Opposing Motions.*
    Any party opposing any motion shall file three copies of a responsive brief with the Clerk, together with any opposing affidavits, depositions, transcripts or other documents, within 15 days after the filing of the movant's brief, provided, however, that if the movant's brief is filed within 30 days of the date set for the final pre-trial conference, the responsive brief shall be filed on a date halfway between the date of filing of the movant's brief and the date of such conference, and provided further that if the date of the pre-trial conference is not

a date certain, or if the pre-trial conference has already been held, the responsive brief shall be filed within 10 days after the filing of the movant's brief. Only the original brief need have a cover. Except where alternative motions are filed, each brief shall treat of only one motion. A motion to shorten time may be granted by the court without waiting for a responsive brief. Failure of a respondent to comply with this sub-paragraph or any other briefing schedule set by the court shall constitute a waiver of opposition to such motion and the motion will be granted.

paragraph is a part of a larger general section 3 captioned "Motions." The first sentence of paragraph 3.1 reads "all motions *prior to trial*, including motions to dismiss and motions for summary judgment, shall be written. . . ." (emphasis supplied). Nowhere in paragraph 3.7 is there any clear suggestion that the motions referred to therein are other than pretrial motions with which paragraph 3.1 deals. Indeed, the text of paragraph 3.7 principally relates the briefing schedule to the pretrial conference. It would take greater clairvoyance than is likely to be possessed by the average busy trial lawyer to appreciate that paragraph 3.7 meant, when entered *sua sponte* the day after the complaint was filed, what the court later held it to mean. To insist upon a $165,463.89 sanction for a client because his attorney lacks such clairvoyance seems to us to impose a greater burden on litigants than any rationally perceived necessities of the adversary system require.

■ We note, too, that although paragraph 3.7 appears in what the court entitles an order, it is certainly not a conventional order; normally an order is the product of notice, opportunity to be heard, and resolution after adversarial presentations. Rather, paragraph 3.7 is part of a standard form entered *sua sponte* in all civil cases before this district court. Thus, it is in the nature of a local rule.[2] The district courts are authorized by statute to adopt such local rules. 28 U.S.C. § 2071. The method of adoption is specified in Fed.R.Civ.P. 83. Adoption requires action by a majority of the judges in a district, which did not occur here. In cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with the Federal Rules of Civil Procedure. In this instance, by applying paragraph 3.7 of Or-

der # 2, the district court acted inconsistently with Rule 50(b), which permits relief from a verdict only to the extent that the motion for such relief relies on the same legal grounds advanced in a motion for directed verdict. The court's authority to regulate practice does not include the authority to increase the relief which can be afforded under Rule 50(b). Even if Rule 83 did not expressly restrict the court's power to develop arcane local rules, since paragraph 3.7 of Order # 2 provides a procedure for setting aside jury verdicts unknown to the common law, the seventh amendment would in any event be a formidable barrier.

■ Wall also appeals from the denial of his motions for judgment notwithstanding the verdict, and for a new trial. The district court declined to hear the first, because it construed Rule 50(b) to require *filing* as well as service of a judgment notwithstanding the verdict motion within ten days after the entry of judgment. Wall argues persuasively that Rule 50(b) is silent on the necessity for timely filing rather than timely service, and that especially since the time limits stated in Rule 50(b) are identical to those in Rules 52(b) and 59(b), the measure of compliance should be the same under all three. The government does not suggest any need for filing under one rule and service under the others. We need not decide the question of timeliness of Wall's motion for judgment notwithstanding the verdict, however, since our examination of the record discloses that, timely or not, it could not have been granted. Wall made no motion for a directed verdict.

■ The new trial motion was served within the time permitted by Rule 59. It

---

2. The difficulty confronting lawyers who are forced to decipher the trial court's local practice rules is well illustrated by the rather opaque language of paragraph 13 of Order # 2:

   *Conflict with Rules of Court or Prior Orders*
   Should any provision of this order conflict with any Rule of the United States District Court for the Middle District of Pennsylvania or any standing order of this Court or Dis-

trict, such conflicting provision of this order shall control and the Rule of Court or standing order shall be suspended in the above-captioned action to the extent that it conflicts with this order. If any provision of this order conflicts with a prior order in this case, such prior order shall be revoked to the extent that it conflicts with this order.

set forth in great detail plaintiff's grounds for requesting a new trial. Thus, both the court and Wall's adversary had ample notice of his reasons. As noted above, the trial court denied Wall's new trial motion because, as per paragraph 3.6 of Order # 2, the motion was not followed by a supporting memorandum within sixty days of the entry of judgment. We have the same difficulty with paragraph 3.6 as we indicated with respect to paragraph 3.7. Since the district court itself had to go through an elaborate process of construction in order to find that paragraph 3.6 applied, the problem of notice is, if anything, more severe. Thus, we think the court should have considered the new trial motion, and we proceed to consider the grounds upon which plaintiff relied.

▮▮▮▮ Wall contends, first, that the court erred in excluding evidence of his negotiations with certain Internal Revenue Service agents respecting payment of delinquent withholding taxes. He urges, first, that evidence of these negotiations would tend to negate willfulness in the post-August 10, 1972 period, and, second, that the evidence would support a finding that the Internal Revenue Service was estopped from asserting Wall's § 6672 liability. As to willfulness, the proffered evidence would at best tend to show a lack of deviousness or illicit motivation. But willfulness under § 6672 requires only that the failure to pay result from a voluntary, conscious and intentional payment to others before the government. *Harrington v. United States*, 504 F.2d 1306, 1315–16 (1st Cir. 1974); *Burden v. United States*, 486 F.2d 302, 304 (10th Cir. 1973), *cert. denied*, 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974); *Monday v. United States*, 421 F.2d 1210, 1215 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Perhaps Wall intended this evidence to demonstrate "reasonable cause" for not paying the withheld taxes; some courts have held that a taxpayer can, in a § 6672 case, negate willfulness

by showing such reasonable cause. *See, e. g., Cash v. Campbell*, 346 F.2d 670, 672–73 (5th Cir. 1965); *Gray Line Co. v. Granquist*, 237 F.2d 390 (9th Cir. 1956), *cert. denied*, 353 U.S. 911, 77 S.Ct. 667, 1 L.Ed.2d 664 (1957). Other courts, however, have expressed doubt that the "reasonable cause" exception is a proper construction of the statute. *E. g., Harrington v. United States, supra*, 504 F.2d at 1316. We need not resolve the issue in this case, for we think that Mr. Wall's failure to pay the taxes merely in the hope that things would get better and that he would eventually be able to pay is not the kind of reasonable cause to which the cases in question refer. The proffered evidence tended to show only that Wall had such hope, confided it to the Internal Revenue Service, and was not discouraged from his decision to try to keep the business open.[3]

Wall also sought the admission of the negotiations evidence on the ground that it would establish an estoppel against the government's assertion of § 6672 liability. A similar estoppel contention was rejected in *Monday v. United States, supra*, 421 F.2d at 1217–18. We, too, find it to be without merit. Accordingly, since neither of Wall's reasons for admitting the negotiations evidence is legally meritorious, the court's disposition of the matter was correct.

▮▮▮▮ Wall's second argument for a new trial is that the jury could not on the evidence find that he was responsible and willful for failing to pay taxes for the payroll period ending September 7, 1972. We have examined the record and conclude that the evidence sufficiently supports the jury's answers to the special verdict interrogatories. The amount due was established by stipulation.

Thus, although the court denied Wall's new trial motion for reasons which were impermissible, the denial of the motion was proper.

The judgment dated August 29, 1977 in favor of the United States for $179,752.06

---

3. Judge Weis believes that the tendered evidence would have been relevant on the issue of willfulness, but does not find the error to be other than harmless in the unusual circumstances of the case.

164

shall be vacated, and the case remanded to the district court with a direction to reinstate the final judgment of June 20, 1977 in favor of the United States in the amount of $14,288.17. No costs.