**In re John J. TREACY and Mary Anne B. Treacy, Debtors.**

**No. 99–31333 SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 19, 2000.

Eugene Joseph Malady, Media, PA, for debtor.

Jonathan D. Carroll, Department of Justice, Washington, DC, for IRS.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

The Court has before it an Objection by debtors John and Mary Anne Treacy (the

"Debtors") to a proof of claim filed by the Internal Revenue Service (the "IRS"). An evidentiary hearing was held on June 6, 2000, after the conclusion of which the Court took the matter under advisement and provided the parties an opportunity to file post-hearing briefs. For the reasons stated more fully below, the Debtors' objection to the IRS's claim is denied.[1]

### BACKGROUND

Principally at issue in the matter *sub judice*, is whether debtor John Treacy ("Treacy")—the IRS having admitted in its response to the Objection that debtor Mary Anne Treacy is not responsible for payment of the taxes at issue—is liable to the government for unpaid employee withholding taxes as a "responsible person" within meaning of § 6672 of the Internal Revenue Code. Under this section, a "responsible person" is "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof...." 26 U.S.C. § 6672. Though stipulating that the taxes at issue were assessed and that the amounts thereof are correct, Treacy's chief contention is that he is merely a "fall guy," set up to look like a "responsible person" through the machinations of Frank Wizoreck, the owner of World Headquarters, Inc., Treacy's employer at the time, and Donald Howie, a former IRS agent employed by Wizoreck as a tax consultant/advisor. As will be discussed *infra*, however, regardless of whether others might also be liable for the nonpayment of the withholding taxes at issue, *e.g.*, responsible person liability is joint and several, *see Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 926–27

(3d Cir.1990), the evidence of record failed to establish that Treacy is not a responsible person in his own right, and therefore subject to liability for the total amount of withholding not paid.

At the hearing, the Court heard oral testimony from Treacy, Wizoreck and Howie. Though an additional witness subpoenaed by Treacy, Stanley McBurse, failed to appear at the hearing, the IRS consented to the introduction and admission into evidence of the transcribed notes of his deposition testimony taken on May 19, 2000. Upon consideration of the foregoing, and the documentary evidence admitted into the record at the hearing, the following picture emerges. In or about 1969, Treacy began working for a company called Provident Fire Equipment Company as a key punch operator. Provident was primarily engaged in the business of fabricating and installing sheet metal cooking area hoods and exhaust ducts, and related fire protection systems, for restaurants. Treacy was hired by Wizoreck, one of Provident's owners.[2]

Though Treacy had no formal education beyond high school, by about 1975 or 1976 he had been promoted to the position of office manager. In this capacity Treacy was primarily responsible for running the shop, *e.g.*, the production end of the business, and reported to McBurse, the general manager of the company. Wizoreck was primarily engaged in sales, and appears to have left much of the day to day operations of the company in the hands of McBurse. This notwithstanding, Wizoreck held the rains of control tightly, keeping informed of happenings in the company when he was not at the office and making final decisions on important company business, particularly regarding company finances.

---

1. The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. §§ 157(a), 157(b)(1) and 157(b)(2)(A), (B) and (O).

2. Treacy testified, as did McBurse in his deposition, that Wizorek had a partner in Provident by the name of John Brody, Tr., at p. 22; McBurse Depo. Tr., at pp. 8–9, who died in or about 1972 or 1973. Tr., at p. 23.

In or about 1972 or 1973, Provident Fire acquired, or merged with, a company named Emergency Fire Equipment, and the two companies were effectively run as one thereafter. The companies frequently experienced cash shortfalls that often necessitated prioritizing certain creditors for payment ahead of others. Often, taxes owed to the federal government were either not paid on time, or were not paid at all. As a result, the company was investigated by the IRS. One of the agents assigned to the case was Howie. Ultimately, Provident ceased operating, and a new company, World Headquarters, Inc., was formed to replace it. By this time, Howie was on board as a "tax consultant/advisor" and admitted rendering advice to Wizoreck concerning the decision to form World Headquarters. At the hearing, counsel for both parties stipulated that Provident, Emergency Fire, and World Headquarters would collectively be referred to as "the Companies."

McBurse resigned from Provident after the IRS investigation commenced, but before World Headquarters was created. After McBurse left, Treacy succeeded him as general manager. One of Treacy's new duties was payroll. He explained that this generally involved determining employee wage and tax withholding amounts, recording such information in a payroll log book, writing and signing employee paychecks. Wizoreck, and bookkeeper Betty Wizoreck (Wizoreck's wife) could also sign company paychecks. As general manager, Treacy also became responsible for accounts receivable and accounts payable. He was also able to hire and fire employees after consulting with Wizoreck.

Prior to the creation of World Headquarters, IRS Form 941 Employer's Quarterly Federal Tax Returns were prepared by company bookkeeper Marge Biddle. Treacy testified that after Biddle left the 941's were prepared by Howie from the payroll log books he maintained, and that the completed the forms were presented to him for signing. He contends that he signed the 941's as President at the suggestion of Howie. Howie, who was sequestered during Treacy's testimony at the hearing, testified that he prepared the 941's and submitted them to Treacy for signature. The IRS challenged the foregoing version of events by confronting Treacy with inconsistent deposition testimony taken on April 13, 2000, wherein he unequivocally stated that he prepared the 941's and that Howie merely reviewed the completed forms for errors prior to filing. At the hearing, Treacy attempted to mitigate the prior inconsistency by saying that he was mistaken as to his understanding of the question when it was posed at the deposition. A review of the deposition transcript does not bear this contention out. Irrespective of who actually completed the 941's, Treacy admitted understanding that the tax liabilities reflected on the forms were to be paid at the time the 941's were filed. This notwithstanding, the 941's for quarters ending: 9/86, 12/86, 3/87, and 6/87—were signed by Treacy, as President, and reflect the following balances due at the time of filing: $7,347, $7,403, $7,824, $8,185, respectively. *See* Exhibit D–8.

Like its predecessor, World Headquarters often experienced cash flow problems rendering it unable to pay all of its creditors on time. Treacy explained that when the cash coming in was insufficient to satisfy all of its creditors during a given period, bills would be paid according to "[t]he importance of the creditors and how much we owed them. Certain jobs required steel.... Obviously, if we needed a job done, they would get paid first. The ancil [sic] company, which—the company that provided us with the fire systems, would be second." Tr., at 31. Withholding taxes were accorded a lower priority. As to how these decisions were made, Treacy testified: "[b]y Frank [Wizoreck], myself and Mr. Howie." *Id.* He further explained that his role was essentially limited to reporting what creditors were owed and how much. As part of his accounts

payable responsibilities, Treacy would generally write out the checks to pay creditors. He was authorized to sign checks for amounts up to $1,000 without Wizoreck's approval. Treacy ultimately resigned from World Headquarters in or about 1987 or 1988.

In or about 1990, Wizoreck, his wife Betty, and their daughter Elizabeth, were assessed a 100% penalty as responsible persons for failing to pay over employment taxes owed by World Headquarters for certain quarters in 1985, 1986, and 1987. Howie appealed the assessments. In prosecuting the appeal, Howie appears to have sought to deflect IRS scrutiny away from Wizoreck, *et al.,* by redirecting such attention to Treacy. For instance, on Form 4180, Report of Interview Held With Persons Relative to Recommendation of 100–Percent Penalty Assessment (the "Report of Interview"), Exhibit D–2, Howie portrayed Wizoreck as merely an "employee" of Provident, *id.* (Answer to Question 3), primarily engaged in "sales" *id.,* (Answer to Question 4), who had no involvement in the financial dealings of the company such as the payment of creditors. Treacy, on the other hand, was described as the sole shareholder, officer and director of the corporation, *id.,* (Questions 6, 7 and 29(a)), the final decision maker, *id.* (Question 15(e)), who authorized payments to other creditors during periods when tax liabilities were owing, *Id.* (Question numbers 26 and 27). Howie also alleged that there were not enough funds to pay all creditors what they were owed, including the IRS, due to the theft of company funds by Treacy. In a follow-up written statement to the IRS, Exhibit D–5, Howie alleged, *inter alia,* that World Headquarters was a joint undertaking between Wizoreck and Treacy, whereby Wizoreck was to take care of sales, and Treacy was to handle the business affairs of the company, including the payment of taxes. He alleged that as between them, Treacy had full control of the monies and decided which creditors got paid and when. He further alleged that the company ultimately failed due to the theft of funds from the business by Treacy.

Howie's efforts to exculpate Wizoreck were apparently successful, as Treacy was subsequently assessed a 100% penalty by the IRS. Ironically, Treacy called on Howie to defend him before the IRS with regard to the assessment, unaware that Howie was largely responsible for the assessment being imposed against him in the first place. Howie did not inform Treacy of this fact.

The Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1330, on September 9, 1999. The IRS filed a proof of claim in the case asserting both a secured claim in the amount of $78,323.46, and an unsecured priority claim in the amount of $79,958.76. The Debtors filed the instant Objection on February 16, 2000. At the hearing Treacy, as noted, argued that he is not a responsible person within the meaning of § 6672, but has only been made to appear that way due to the efforts of both Wizoreck and Howie. Treacy posits that because Wizoreck had been assessed a 100% penalty in regard to one of his prior companies, Wizoreck hired him to prevent it from happening again in the future. He posits that he was set-up by Howie to appear to be a responsible person for purposes of insulating Wizoreck from § 6672 liability in the future. In essence, he contends that the responsible person liability to which he is now subject was manufactured by Howie and Wizoreck to insulate Wizoreck.

At the hearing, Treacy argued for the first time that even if he were found to be a "responsible party" he should not be held liable for the unpaid taxes due to the existence of "reasonable cause." Citing *East Wind Industries, Inc. v. U.S.,* 196 F.3d 499 (3d Cir.1999), Treacy argued that non-payment of the taxes under circumstances where the company is in financial distress, and an employee is essentially left "holding

the bag" for unpaid taxes due to a scheme concocted by those actually responsible for the non-payment, so that they may avoid liability, constitutes "reasonable cause" excusing such person's failure to pay. The IRS counters that the evidence well established that Treacy is a responsible person within the meaning of 26 U.S.C. § 6672 who acted wilfully in failing to remit the trust fund taxes at issue to the government.

## DISCUSSION

Employers are obligated under the Internal Revenue Code ("IRC") to withhold federal income and social security taxes from the wages of their employees, and to hold such taxes in trust for the United States. *See* 26 U.S.C. §§ 3102, 3402, 7501. These withheld sums, often referred to as "trust fund" taxes, must be paid over to the government on a quarterly basis. The government is required to credit employees for the taxes withheld from their wages regardless of whether they are actually paid by the employer. *See In re Ribs–R–Us, Inc.*, 828 F.2d 199, 200 (3d Cir.1987) (citing *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978)). Because of this, and to ensure employer compliance with the foregoing obligations, Congress enacted IRC § 6672 which enables the government to seek payment of unpaid trust fund taxes directly from officers and employees of such employers who are responsible for nonpayment. More particularly, § 6672(a) provides that any person responsible for withholding and paying over such taxes to the government who wilfully fails to do so,

is liable for a penalty equal to the total amount of the taxes not paid.[3] The term "person," as used in § 6672(a), is defined to include officers or employees of a corporation who are under a duty to perform the act in respect to which the violation occurs. 11 U.S.C. § 6671(b).

■ Responsible persons who fail to fulfill their obligation to pay trust fund taxes over to the government are subject to assessment of a 100% penalty in an amount equal to the taxes that were not paid. *See* 26 U.S.C. § 6671, § 6672. A 100% penalty assessment is equivalent to the assessment of a tax. *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir. 1992). Under the rules in effect during the tax years in question, such an assessment gives rise to a rebuttable presumption of correctness in favor of the government.[4] *Id.* (citing *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971)); *Hudson v. United States*, No. Civ.A. 98–1811, 1999 WL 820453, at *3 (E.D.Pa., Sept. 29, 1999). In the instant case, Treacy stipulated that the IRS assessed a 100% penalty against him, and that the amount assessed is correct. Treacy disputes, however, that he is a responsible person within meaning of § 6672(a) liable for payment of unpaid trust fund taxes to the government. To avoid § 6672(a) liability, Treacy bears the burden of coming forward and proving by a preponderance of the evidence that he: a) is not a responsible person within meaning of the statute, or b) that he did not wilfully fail to remit the trust fund taxes in issue to the government. *See Brounstein*, 979 F.2d at 954; *accord United States v.*

---

3. In pertinent part, IRC § 6672(a) provides as follows:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

4. The Internal Revenue Service Restructuring & Reform Act of 1998, Pub.L. 105–206, which went into effect on July 22, 1998, added § 7491, changed the burden of proof in certain circumstances. That section, however, applies only to "court proceedings arising in connection with examinations commencing after the date of the enactment of this Act[,]" Pub.L. 105–206, § 3001(c), and is therefore not applicable in the present proceeding.

*Running,* 7 F.3d 1293, 1297 (7th Cir. 1993); *United States v. McCombs,* 30 F.3d 310, 318 (2d Cir.1994). The burden on the taxpayer not altered because the issue arises in the context of a bankruptcy proceeding. *See Raleigh v. Illinois Department of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

■■■ A responsible person under section 6672(a) is a person required to collect, truthfully account for or pay over any tax to the government. *Quattrone,* 895 F.2d at 927 (citing *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978)). Responsibility, in this context, is a matter of "status, duty, or authority, not knowledge." *Id.* While a responsible person must have significant control over the corporation's finances, exclusive control is not necessary. *Quattrone,* 895 F.2d at 927. In determining whether an individual is a person responsible for paying over a tax, the Third Circuit has consistently recognized the following factors as indicia of responsibility: (1) contents of the corporate bylaws; (2) ability to sign checks on the company's bank account; (3) signature on the employer's federal quarterly and other tax returns; (4) payment of other creditors in lieu of the United States: (5) identity of officers, directors, and principal stockholders in the firm: (6) identity of individuals in charge of hiring and discharging employees: and (7) identity of individuals in charge of the firm's financial affairs. *Greenberg v. U.S.,* 46 F.3d 239, 243 (3d Cir.1994); *Brounstein,* 979 F.2d at 954–55 (citing *Datlof v. United States,* 252 F.Supp. 11, 32–33 (E.D.Pa.), *aff'd,* 370 F.2d 655 (3rd Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967)). The question of control over the employer's finances must be answered in light of the totality of the circumstances; no single factor, or the absence thereof is determinative. *See Fiataruolo v. U.S.,* 8 F.3d 930, 939 (2nd Cir.1993).

■■■ The evidence of record established that Treacy was a designated signatory on World Headquarters' corporate checking account. Moreover, he admitted having check writing authority for amounts up to $1,000 without having to obtain Wizoreck's approval, and that he used such authority on numerous occasions to sign employee paychecks and to pay other creditors at times when he knew that payroll taxes were unpaid and owing to the government. He signed Form 941˙federal quarterly tax returns on behalf of the company, and was aware at the time of doing so that sufficient funds were not on deposit to satisfy the tax liability reported. He admitted having authority to hire and fire employees. He held himself out to be an officer of the corporation when opening the corporate checking account (Secretary/Treasurer), and in signing the quarterly tax returns on behalf of the corporation (President) though it appears that he was not an officer. He admitted receiving IRS notices of tax deficiency during the periods in question and yet continued to pay other creditors in lieu of the IRS. He also admitted participating in the process of deciding which creditors would be paid when there were insufficient funds on hand to pay all creditors, including the IRS, on time. Though he argued that his participation this process was limited to merely informing Wizoreck which creditors the Company owed money to, and that Wizoreck instructed him as to which creditors were to be paid, he admitted following through on such instructions and paying other creditors before amounts owing to the federal government were paid. The foregoing establishes that Treacy had significant control over the company's finances for § 6672 purposes. Treacy counters by arguing that he was clothed with the indicia of a "responsible party" by Wizoreck and Howie for the purpose of shifting such liability from Wizoreck to him. Even if the Court were to accept the proposition that Wizoreck and Howie conspired to impose such liability on Treacy, *e.g.,* by having him sign bank applications as Secretary/Treasurer, and sign the 941 quarterly tax returns as President,

this argument only goes so far, since even if the Court were to look past such outward indicia of responsibility, Treacy was not only aware that other creditors were being paid ahead of the IRS at the time he became general manager, he involved himself in such practice upon becoming general manager by continuing to do the same thing.

■ To be held liable under § 6672, the decision to prefer other creditors must also be "willful." The Third Circuit has defined "willfulness" in this context as " 'a voluntary, conscious and intentional decision to prefer other creditors over the Government.' A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid.' " *Greenberg v. U.S.*, 46 F.3d at 244 (citing *Brounstein*, 979 F.2d at 955–56) (quoting *Quattrone*, 895 F.2d at 928); *United States v. Vespe*, 868 F.2d 1328, 1334 (3d Cir.1989). "Reckless disregard includes failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid." *Greenberg*, 46 F.3d at 244 citing *Morgan v. United States*, 937 F.2d 281, 286 (5th Cir.1991) (per curiam). The taxpayer need not act with an evil motive or bad purpose for his action or inaction to be considered willful under § 6672. *Id.* (citing *Hochstein v. United States*, 900 F.2d 543, 548 (2d Cir.1990)). Any payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the government, constitutes a willful failure to pay taxes. *Id.* (citing *Datlof v. United States*, 252 F.Supp. at 32–33). In the instant case, Treacy admitted being aware that the company paid other creditors during periods when he knew that employment taxes were not paid. Moreover, he admitted knowing that employment taxes were unpaid when he did the company payroll and issued payroll checks to company employees. Payments in preference

of other creditors under these circumstances were clearly wilful under the foregoing authorities.

■ In his defense, Treacy argues that he was ordered by Wizoreck to pay other creditors in lieu of the IRS, and that if he defied Wizoreck's instructions on this point he would have lost his job. Following orders to pay other creditors, even employee wage claims, is not a cognizable defense to responsible person liability. *Greenberg*, 46 F.3d at 244; *Brounstein*, 979 F.2d at 956; *accord Howard v. United States*, 711 F.2d 729, 733–34 (5th Cir.1983) (responsible persons' failure to ensure payment of withholding taxes where chief executive officer ordered him not to pay taxes still willful for purposes of § 6672).

■ Treacy also argues that he is not liable as a responsible person due to "reasonable cause." Citing *East Wind Industries, Inc. v. U.S.*, 196 F.3d 499, Treacy contends that in addition to being a responsible party, in order to be found liable for not paying withholding taxes over to the government, the failure to remit the taxes "must not result from willful neglect but, rather, be due to reasonable cause." Treacy Post–Hearing Memorandum, at 6.

*East Wind Industries* is inapposite to the case at bar. The issue in that case was whether financial difficulties *per se* can never constitute "reasonable cause" for abatement of a penalty assessed pursuant to IRC § 6651 and § 6656. Under § 6651(a)(1), (a)(2) and § 6656(a), the IRS imposes mandatory penalties for the failure to file returns, pay taxes, or deposit employment taxes in a government depository unless the taxpayer can show that such failure was due to "reasonable cause" and not due to "willful neglect." Thus, to succeed in obtaining an abatement of penalties imposed under § 6651 and § 6656, the taxpayer bears the "heavy burden of establishing that (1) the failure did not result from 'willful neglect,' and (2) the failure was 'due to reasonable cause.' " *East Wind Industries*, 196 F.3d at 504

(citing *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985)). The instant case, however concerns "responsible person" liability under IRC § 6672. As discussed *supra*, to abate an assessment made pursuant to IRC § 6672 Treacy bears the burden of establishing that a) he is not a "responsible person" within meaning of such section, or b) that he did not wilfully fail to remit the trust fund taxes in issue. *See Brounstein*, 979 F.2d at 954. Unlike § 6651 and § 6656, "reasonable cause" is not a part of the statutory language of § 6672, nor the regulations that interpret and implement this section.

Treacy's attempt to import the foregoing "reasonable cause" standard into the instant analysis is not well founded for other reasons as well. First, recent decisions of the Third Circuit Court of Appeals concerning § 6672 liability do not include reasonable cause as part of the definition of willfulness. *See Katz v. U.S.*, NO. CIV.A. 91–5623, 1992 WL 236273, at *3 (E.D.Pa. Sept. 9, 1992); *see also Wall v. U.S.*, 592 F.2d 154 (3d Cir.1979) (noting divergent views among the courts as to the existence of a reasonable cause exception, and holding that, while it was not necessary to resolve the issue in that case, the taxpayer's failure to pay withholding taxes merely in the hope that things would get better and that he would eventually be able to pay the taxes is not the kind of reasonable cause to which the cases refer). Moreover, the "reasonable cause" justification recognized as valid in East Wind Industries—payment of wages and other suppliers in lieu of the government was justified to keep the business operating where the company's financial troubles were directly attributable to demands for bribes by corrupt government officials—would, if applied here as the Debtor requests, directly

contradict well established and directly apposite Third Circuit case law holding that with regard to § 6672 liability, use of employment taxes to pay other creditors, even to keep a business operating, constitutes willfulness subjecting the responsible person to liability.[5] *See Greenberg v. U.S.*, 46 F.3d at 244.

Even among the Courts of Appeals that recognize a reasonable cause exception to § 6672 liability, the circumstances present in the instant case would not support relief. For instance, in the Second Circuit, a "responsible person's failure to cause the withholding taxes to be paid is not willful if he [or she] believed that the taxes were in fact being paid, so long as that belief was, in the circumstances, a reasonable one." *Winter v. U.S.*, 196 F.3d 339, 345 (2nd Cir.1999) (quoting *U.S. v. Rem*, 38 F.3d 634, 643 (2nd Cir.1994)). The Tenth Circuit in *Finley v. U.S.*, 123 F.3d 1342 (10th Cir.1997), cited by the IRS in its brief, held that "reasonable cause sufficient to excuse a responsible person's failure to pay withholding taxes should be limited to those circumstances where (1) the taxpayer has made reasonable efforts to protect the trust funds, but (2) those efforts have been frustrated by circumstances outside the taxpayer's control." 123 F.3d at 1348. The facts of the instant case would satisfy neither standard since Treacy was admittedly aware that employment taxes were owed to the government at times when he wrote and issued checks to other creditors, and took no steps to rectify the situation.

Based upon consideration of all of the foregoing, the Court concludes that Treacy has failed carry his burden of negating § 6672 responsible person liability. Ac-

---

**5.** It is unlikely that the *East Wind* Court was acting *sub-silentio*. Moreover, barring an intervening change in the law, individual panels of the Court of Appeals are generally bound by, and lack authority to overrule a published decision of a prior panel. *See Sheet Metal*

*Workers Intern. Ass'n. Local Union No. 19 v. U.S. Dept. of Veteran's Affairs*, 135 F.3d 891, 902 (3d Cir.1998). In any event, no such intention can fairly be gleaned on the part of the *East Wind* Court.

cordingly, his Objection to the proof of claim filed by the IRS is denied.