

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-1995

# Greenberg v USA

Precedential or Non-Precedential:

Docket 94-7075

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Greenberg v USA" (1995). *1995 Decisions*. Paper 16.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/16

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

———————

No. 94-7075

———————

MARK Z. GREENBERG,
                              Appellant

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF THE TREASURY;
INTERNAL REVENUE SERVICE,
                              Appellees

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 92-cv-00642)

District Judge:  Honorable Sylvia H. Rambo

———————

Argued:  August 9, 1994

PRESENT:  HUTCHINSON and NYGAARD, Circuit Judges,
          and LUDWIG, District Judge*

(Filed December 15, 1994)

———————

Robert E. Chernicoff, Esquire          (Argued)
Paige F. Macdonald, Esquire
Farr & Cunningham
2320 North Second Street
P.O. Box 1855
Harrisburg, PA      17105
          Attorneys for Appellant

———————

\*   Hon. Edmund V. Ludwig, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Loretta C. Argrett, Esquire
  Assistant Attorney General
David Barasch, Esquire
  United States Attorney
Gary R. Allen, Esquire
Jonathan S. Cohen, Esquire          (Argued)
Billie L. Crowe, Esquire
Tax Division
United States Department of Justice
P.O. Box 502
Washington, DC    20044
                 Attorneys for Appellees

_____

OPINION OF THE COURT
_____


HUTCHINSON, Circuit Judge.


        Appellant, Mark Z. Greenberg ("Greenberg"), appeals an order of the United States District Court for the Middle District of Pennsylvania granting summary judgment in favor of appellee, United States of America ("United States"), on Greenberg's claim for a partial refund of an amount Greenberg paid on an Internal Revenue Service ("IRS") penalty assessment, and on the United States' counterclaim to reduce the balance of the assessment to judgment.  In doing so, the district court upheld IRS's assessment of a 100% "penalty" against Greenberg under section 6672 of the Internal Revenue Code of 1954 (the "Code"), 26 U.S.C.A. § 6672 (West Supp. 1994), after finding that Greenberg was a "responsible person" who had "willfully" failed to pay over to IRS federal employment taxes owed by his employer, Turning Basin, Inc. ("Turning Basin" or the "Company").  We will affirm.

##### I. Factual & Procedural History

Turning Basin was a holding company which acquired other companies through leveraged buyouts. Greenberg, a certified public accountant since 1973, served initially as an outside accountant for Turning Basin while employed by Alan Moskowitz & Company. In late 1979, Greenberg accepted the position of in-house controller at Turning Basin. Soon after joining Turning Basin, Greenberg became its treasurer and assistant secretary and signed at least one corporate document, a loan guarantee, in this capacity. Greenberg also served as a member of Turning Basin's Board of Directors and in 1981 he received 40,000 shares of Turning Basin stock. Throughout Greenberg's tenure with Turning Basin, Arthur Tuchinsky ("Tuchinsky") was Chairman of its Board of Directors, as well as its Chief Executive Officer and controlling shareholder.

As controller of Turning Basin, Greenberg supervised a staff of one accountant and two bookkeepers and was responsible for the hiring and firing of employees within his department. Although Greenberg acknowledged he exercised this authority, he contended that decisions on hiring and firing were ultimately determined by Tuchinsky. Greenberg also testified that Tuchinsky set the salaries of all of Turning Basin's employees and officers.

As controller, Greenberg was also responsible for preparing financial statements and reports on the Company's subsidiaries. These statements and reports were included in quarterly or semi-annual reports to Turning Basin's stockholders.

Greenberg coordinated Turning Basin's annual audits with its outside accounting firm and his department was responsible for overseeing payment of Turning Basin's creditors and reconciling the Company's checking account. He was an authorized signatory on all of Turning Basin's bank accounts and signed checks on all of them. Turning Basin's corporate checkbooks were first kept in Greenberg's office and later in the bookkeepers' office. Greenberg had access to these checkbooks at all times. At his deposition, Greenberg stated that although he had constant access to the Company's checkbooks and was an authorized signatory, he only wrote checks when directed to do so by Tuchinsky. Greenberg also testified that he was not authorized to raise cash on behalf of the Company or make wire transfers for Turning Basin without specific permission from Tuchinsky.

Sometime in 1981, Turning Basin began having cash-flow problems. Greenberg then became responsible for reviewing the accounts payable with Tuchinsky and assisting Tuchinsky in determining which creditors should be paid first. Once Greenberg and Tuchinsky decided who would be paid, Greenberg would sign checks to pay them. Whenever a check was returned for insufficient funds, the bank or creditor would contact either Greenberg or Tuchinsky in order to resolve the matter. According to Greenberg's deposition testimony, he and Tuchinsky would again discuss which current bills were most urgent and Tuchinsky would decide who to pay and where to find the money to pay them. Greenberg testified that he never refused to pay anyone that

Tuchinsky told him to pay, nor did he ever pay any creditor Tuchinsky told him not to pay.

Greenberg was also responsible for preparing and filing Turning Basin's federal tax returns, including its federal employment tax returns on Forms 940 and 941. By 1981, Turning Basin was delinquent in remitting the withholding taxes to IRS. Greenberg was aware of the tax delinquency from the time it began. He testified that he discussed the tax delinquencies with Tuchinsky and repeatedly recommended that the taxes be paid. Greenberg testified that Tuchinsky assured him the taxes would get paid, and that Greenberg had believed these assurances. He admitted, however, that on at least one occasion Tuchinsky informed him that they must pay more urgent bills right away in order to keep the business going and would pay the taxes later.

Greenberg therefore continued to write checks to Turning Basin's employees and other creditors despite the existing withholding tax delinquencies. Because Tuchinsky was responsible for placing money in Turning Basin's checking accounts, Greenberg did not write a check to IRS for the withholding tax delinquencies because he knew there would be no funds in the account to cover the check. Greenberg also believed that if he did issue a check to IRS without Tuchinsky's approval, he would have been fired immediately. He acknowledged that he could have authorized wire transfers of cash from the subsidiary corporations' accounts to Turning Basin's accounts without Tuchinsky's instructions but did not do so because he felt it was beyond his authority.

Eventually, Tuchinsky told Greenberg to write checks to cover the withholding tax delinquencies.  Greenberg did so, and when the checks were returned for insufficient funds, Greenberg confronted Tuchinsky.  When he realized the tax liability would not be paid, Greenberg resigned as an officer and director of Turning Basin.

On February 9, 1987, the IRS entered an assessment under 26 U.S.C.A. § 6672(a) against Greenberg for Turning Basin's delinquent withholding taxes.  Greenberg paid $4,024.26 toward the assessment and on May 13, 1992 filed a complaint in the United States District Court for the Middle District of Pennsylvania seeking a refund.  The United States filed an answer on October 6, 1992 along with a counterclaim seeking $14,456.52 plus interest which it claimed Greenberg still owed under the penalty provision.

On June 1, 1993, the United States filed a motion for summary judgment, which the district court granted on December 3, 1993.  On February 4, 1994, the court entered an order amending the judgment to reflect Greenberg's additional payment of $2,335.13, making the balance due $23,881.68.  The balance included $11,760.29 in interest which had accrued up to December 3, 1993.

## II.  Jurisdiction & Standard of Review

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §§ 1340, 1346(a)(1) (West 1993) and 26 U.S.C.A. §§ 7401, 7402 (West 1989).  The district court had jurisdiction over the United States' counterclaim pursuant to 28 U.S.C.A. § 1346(c) (West 1993).  We have jurisdiction over the final order of the district court pursuant to 28 U.S.C.A. § 1291 (West 1993).

We review the district court's grant of summary judgment de novo.  United States v. Carrigan, 31 F.3d 130, 133 (3d Cir. 1994).  We consider all of the facts and inferences in the light most favorable to Greenberg, the nonmoving party, in order to determine whether there is a genuine issue of material fact.  If no genuine issue of material fact remains, the moving part is entitled to judgment as a matter of law.[1]  Id.

## III.  Analysis

Sections 3102 and 3401 of the Code require employers to withhold federal social security and income taxes from the wages

_____

[1]. Greenberg filed his notice of appeal on January 31, 1994 but the district court did not enter its order amending the judgment to add interest until February 7, 1994.  Once the district court acts on a motion to amend the judgment we have jurisdiction over the initial judgment or order identified in the notice of appeal, but a party seeking review of a motion that was outstanding at the time the initial notice of appeal was filed must file an amended notice of appeal.  See Fed. R. App. P. 4(a)(4).  No amended notice was filed.  We note, however, that the parties to this appeal do not contest the amount of the judgment or the imposition of interest.  Thus, the sole issue before us is Greenberg's liability for withholding tax.  This was definitively decided by the district court's initial order.

of their employees.  26 U.S.C.A. §§ 3102, 3401 (West Supp. 1994).

The taxes withheld constitute a special fund held "in trust" for

the benefit of the United States.  26 U.S.C.A. § 7501(a) (West

1989).  Section 6672 of the Code imposes a penalty on certain

persons for failure to turn over withholding taxes to the IRS.

26 U.S.C.A. § 6672(a) (West Supp. 1994).  Specifically, it

provides:

> Any person required to collect, truthfully
> account for, and pay over any tax imposed by
> this title who willfully fails to collect
> such tax, or truthfully account for and pay
> over such tax, or willfully attempts in any
> manner to evade or defeat any such tax or the
> payment thereof, shall, in addition to other
> penalties provided by law, be liable to a
> penalty equal to the total amount of the tax
> evaded, or not collected, or not accounted
> for and paid over. . . .

Id.

There are two conditions before liability can be

imposed under section 6672:  first, the individual must be a

"responsible person," and second, his or her failure to pay the

tax must be "willful."  See Carrigan, 31 F.3d at 133; Brounstein

v. United States, 979 F.2d 952, 954 (3d Cir. 1992).  If an

individual's conduct fails to meet either condition, the IRS may

not assess a section 6672 penalty against him.  With this in

mind, we consider whether the district court correctly concluded

that Greenberg was a responsible person who acted willfully when

he failed to pay over Turning Basin's withholding taxes.

### A.   Responsible Person Under Section 6672

For purposes of section 6672, a "person" is defined as "an officer or employee of a corporation . . . under a duty to perform the act in respect of which the violation occurs."  26 U.S.C.A. § 6671(b) (West 1989).  Anyone falling within this definition is generally referred to as a "responsible person." Stated another way, a responsible person, for purposes of section 6672(a), is one who is "required to collect, truthfully account for or pay over any tax due to the United States."  Carrigan, 31 F.3d at 133 (citing Brounstein, 979 F.2d at 954).

"'Responsibility is a matter of status, duty, or authority, not knowledge.'  While a responsible person must have significant control over the corporation's finances, exclusive control is not necessary."  Brounstein, 979 F.2d at 954 (citation omitted) (quoting Quattrone Accountants, Inc. v. IRS, 895 F.2d 921, 927 (3d Cir. 1990)).  In determining whether an individual is a person responsible for paying over withholding taxes, courts consider the following factors:

> (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

Id. at 954-55.  It is not necessary that an individual have the final word on which creditors should be paid in order to be

subject to liability under section 6672; a person may be treated as "responsible" for purposes of the statute if he has significant control over the disbursement of corporate funds. United States v. Vespe, 868 F.2d 1328, 1332 (3d Cir. 1989).

The case before us is clearly distinguishable from the facts involved in Carrigan. There, we held the United States was not entitled to summary judgment on its claim of section 6672 liability because there was evidence that the taxpayer was not a "responsible person." In Carrigan, the taxpayer was not responsible for handling the financial affairs of the company, nor did he prepare, maintain or have access to any of the corporate books, records or checkbooks. Furthermore, the taxpayer in Carrigan did not handle any creditors' bills nor negotiate with any creditor on behalf of the company. See Carrigan, 31 F.3d at 133-34.

In contrast, Greenberg was an authorized signatory on all of Turning Basin's corporate checking accounts and had unrestricted access to them at all times. This record clearly shows that Greenberg used this power and signed most of the payroll checks issued during his tenure at Turning Basin, as well as checks written to a variety of other creditors, including the United States. Greenberg was also an officer of the Company, a member of its Board of Directors and a minority shareholder.

Greenberg was aware of the employment tax delinquency as soon as it arose. He wrote checks to pay other creditors while knowing that withholding tax liabilities to the United

States remained unpaid.[2]  As controller of Turning Basin, Greenberg was in charge of the accounting department and supervised the reconciliation of checking account statements.  He also completed various tax forms.  Furthermore, Greenberg reviewed Turning Point's accounts payable with Tuchinsky, assisted Tuchinsky in determining which creditors should be paid and signed checks to pay creditors and meet payroll.  According to Greenberg's own testimony, he and Tuchinsky discussed which creditors needed to be paid most urgently, i.e., which creditors were threatening to cut off crucial services or supplies, and then decided who to pay.  Finally, Greenberg played a role in the hiring and firing of employees.

Our conclusion that Greenberg is a responsible person for purposes of section 6672 is supported by all of the evidence. The fact that Greenberg was instructed by Tuchinsky to pay creditors other than the United States despite the existence of withholding tax delinquencies and the fact Greenberg feared for his job were he to independently issue a check for the delinquency do not negate his status as a responsible person.

[2].  The dissent argues that Greenberg's check-writing function was merely ministerial, and that any checks Greenberg wrote were "worthless unless and until Tuchinsky deposited money into the checking account to cover them."  See infra, typescript at 3, lines 12-16.  The record shows that Greenberg wrote checks to other creditors and they were successfully negotiated.  Instead of issuing these checks, Greenberg could have chosen to write checks to the United States.  We recognize that the record also contains evidence tending to show that Greenberg would have lost his job when Tuchinsky discovered he had paid IRS but, as the dissent acknowledges, the threat that a person will be fired if he pays withholding taxes does not excuse a responsible person from the obligation to pay IRS.

"Instructions from a superior not to pay taxes do not . . . take a person otherwise responsible under section 6672(a) out of that category." Brounstein, 979 F.2d at 955 (citing Gephart v. United States, 818 F.2d 469, 474-75 (6th Cir. 1987); Roth v. United States, 779 F.2d 1567, 1571-72 (11th Cir. 1986); Howard v. United States, 711 F.2d 729, 734 (5th Cir. 1983)). We agree with the district court that this record does not leave any material questions of fact on Greenberg's responsibility for paying Turning Point's withholding taxes under section 6672.

### B. Willfulness Under Section 6672

The fact that Greenberg is a responsible person does not end our inquiry because IRS may impose section 6672 liability only if a responsible person "willfully" fails to collect, account for or pay over the withheld taxes. 26 U.S.C.A. § 6672(a). We have stated, "[u]nder section 6672(a), willfulness is 'a voluntary, conscious and intentional decision to prefer other creditors over the Government.' A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid." Brounstein, 979 F.2d at 955-56 (citations omitted) (quoting Quattrone, 895 F.2d at 928). In order for the failure to turn over withholding taxes to be willful, a responsible person need only know that the taxes are due or act in reckless disregard of this fact when he fails to remit to IRS. "Reckless disregard includes failure to investigate or correct mismanagement after being notified that

withholding taxes have not been paid." Morgan v. United States, 937 F.2d 281, 286 (5th Cir. 1991) (per curiam); see also Vespe, 868 F.2d at 1335. The taxpayer need not act with an evil motive or bad purpose for his action or inaction to be willful. Hochstein v. United States, 900 F.2d 543, 548 (2d Cir. 1990). Any payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes. See Datlof v. United States, 252 F. Supp. 11, 32-33 (E.D. Pa.), aff'd, 370 F.2d 655 (3d Cir. 1966), cert. denied, 387 U.S. 906 (1967).

Thus, Greenberg's failure to pay the withholding taxes Turning Basin owed IRS is willful if he paid other creditors, including employees, knowing that the withholding taxes were due. It is no defense that the corporation was in financial distress and that funds were spent to keep the corporation in business with an expectation that sufficient revenue would later become available to pay the United States. See Emshwiller v. United States, 565 F.2d 1042, 1045-46 (8th Cir. 1977); Hochstein, 900 F.2d at 548-49. It is also not a defense that a taxpayer would lose his job if he signed a check to the IRS without the express authority of a superior. Brounstein, 979 F.2d at 956; accord Howard v. United States, 711 F.2d 729, 733-34 (5th Cir. 1983) (responsible persons' failure to ensure payment of withholding taxes where chief executive officer ordered him not to pay taxes still willful for purposes of section 6672). Finally, the assurance by another that the taxes will be taken care of is not

a defense to liability under section 6672.  See <u>Denbo v. United States</u>, 988 F.2d 1029, 1033-34 (10th Cir. 1993).

Like the taxpayers in <u>Brounstein</u> and <u>Vespe</u>, this record clearly demonstrates Greenberg's knowledge that Turning Basin had not paid withholding taxes due IRS when he was signing checks to Turning Basin's employees and other creditors.  See <u>Brounstein</u>, 979 F.2d at 956; <u>Vespe</u>, 868 F.2d at 1335.  Greenberg does not contend that he was unaware of the outstanding tax liability, nor does he dispute that he wrote checks to other creditors despite his knowledge of the outstanding tax liability.  The record clearly demonstrates that Greenberg acted willfully in failing to ensure payment of the withholding taxes to the IRS.  As a responsible person, he therefore exposed himself to liability under section 6672.  Thus, the district court did not err when it granted summary judgment in favor of the United States and against Greenberg on both Greenberg's complaint and the United States' counterclaim.

## IV.  <u>Conclusion</u>

For these reasons, we will affirm the order of the district court.

<u>Greenberg v. U.S., et al</u>, No. 94-7075

NYGAARD, Circuit Judge, dissenting.

26 U.S.C. § 6672 provides that a person responsible for withholding and paying over taxes who willfully fails to do so is liable for a penalty equal to the total amount of the unpaid taxes. Because I think the facts of this case do not establish Greenberg's responsibility as a matter of law, I would reverse the summary judgment of the district court. Hence, I dissent.

Responsibility under section 6672 "is a matter of status, duty or authority, not knowledge." Quattrone Accountants, Inc. v. IRS, 895 F.2d 921, 927 (3d Cir. 1990). A person is responsible within the meaning of section 6672 "if the person has significant, though not necessarily exclusive, control over the employer's finances." Quattrone Accountants, 895 F.2d at 927. "Significant control" means "the final or significant word over which bills or creditors get paid." Id.; see Gephart v. United States, 818 F.2d 469, 473 (6th Cir. 1987) (stating that the test for responsibility focuses on "the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors."); Godfrey v. United States, 748 F.2d 1568, 1576 (Fed. Cir. 1984) (defining responsibility in terms of a person's "power to compel or prohibit the allocation of corporate funds."). Thus, in Quattrone Accountants, we found an accounting firm to be a responsible person because it

> paid UDF's [the employer's] monthly bills
> without prior approval.  Consistent with this
> authority, [it] had possession of signature
> stamps of the treasurer and president of UDF.
> The only limitation on this authority was
> that each month [it] had to present to the
> Board of UDF the bills it had paid for the
> previous month. . . .

Quattrone Accountants, 895 F.2d at 927.  Factors we have looked to in determining whether a person has significant control over an employer's finances include:

> (1) that person's duties under the employer's
> corporate bylaws; (2) his or her ability to
> sign checks on the employer's bank account;
> (3) the signature on the employer's federal
> quarterly and other tax returns; (4) the
> payment of other creditors in lieu of the
> United States; (5) the identity of the
> officers, directors and principal
> stockholders of the employer; (6) the
> identity of the individuals in charge of
> hiring and firing employees; and (7) the
> identity of the individuals in charge of the
> employer's financial affairs.

Brounstein, 979 F.2d at 955.

The district court held that Greenberg was a responsible person as a matter of law.  It correctly noted that the definition of "responsible person" is not limited to the person with the final say on which bills get paid, but includes others as well.  See Quattrone, 895 F.2d at 927; see also Vespe, 868 F.2d at 1332 ("More than one individual may be a responsible [pe]rson for a given employer.").  The district court concluded, primarily from Greenberg's authority to sign checks, that he had such "significant say."  Dist. Ct. Op. at 10.

I disagree that Greenberg's responsibility was established here as a matter of law. I think that the district court placed too much reliance on Greenberg's check-writing role. That is one factor, relevant to the question of responsibility, but not the only one. See Godfrey, 748 F.2d at 1575 ("The mechanical duties of signing checks and preparing tax returns are . . . not determinative of liability under § 6672."). The reason that check-writing ability is often significant is "because it generally comes with the ability to choose which creditors will be paid." Burack v. United States, 461 F.2d 1282, ____ (Ct. Cl. 1972). Here, however, it may not have. Greenberg has offered evidence that his check-writing functions were merely ministerial, done at Tuchinsky's behest and requiring his prior approval, and that, although Greenberg could write the checks, they were worthless unless and until Tuchinsky deposited money into the checking account to cover them.

The government does not dispute this evidence; it simply points to the other indicia of Greenberg's status. I think that this makes Greenberg's responsibility a question for the jury. The issue is "for the trier of fact to determine, upon all the evidence, taking into account questions of credibility and those reasonable inferences flowing from the evidence which may establish, or fail to establish, that [Greenberg] possessed a sufficient degree of authority over corporate decisionmaking so as to make him a responsible person within section 6672. . . ." Jay v. United States, 865 F.2d 1175, 1179 (10th Cir. 1989).

The district court reasoned that a finding of responsibility was dictated by Brounstein. I disagree. Brounstein was not only the treasurer of the company (like Greenberg), but also was president and under the corporate bylaws had the authority to exercise managerial control. Brounstein, 979 F.2d at 955. Additionally, although most of the checks Brounstein wrote for the company were at the direction of its principal, he also (unlike Greenberg) issued checks without the principal's approval. Id.

We did say in Brounstein that "[i]instructions from a superior not to pay taxes do not, however, take a person otherwise responsible under section 6672(a) out of that category[]," id. at 955 (emphasis added). That, however, does not foreclose the possibility that Greenberg might not be responsible in the first place. The government's reliance on Howard v. United States, 711 F.2d 729 (5th Cir. 1983) and other courts of appeals cases following Howard[3] is, for the same reason, misplaced. In Howard, the Fifth Circuit stated:

> The fact that Jennings [Howard's superior] might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment. Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means effective power to pay. That Howard had that authority is demonstrated by the fact that he did issue small checks

---

[3]. Gephart v. United States, 818 F.2d 469 (6th Cir. 1987); Roth v. United States, 779 F.2d 1567 (11th Cir. 1986).

> without Jennings' approval on a number of
> occasions. . . .

Id. at 734 (citations omitted).  These cases simply say that, if

a person is responsible, a superior's instructions not to pay the