**In the matter of John F. GRILLO and Marie T. Grillo, Debtors.**

**John F. Grillo and Marie T. Grillo, Plaintiffs,**

**v.**

**Duilio Corigliano, United States of America (Internal Revenue Service), and Isabel C. Balboa, Standing Chapter 13 Trustee, Defendants.**

**Bankruptcy No. 04–23121. Adversary No. 04–2640.**

United States Bankruptcy Court, D. New Jersey.

Oct. 7, 2005.

David A. Kasen, Esquire, Kasen, Kasen & Braverman, Cherry Hill, NJ, for Debtors.

Pat S. Genis, Esquire, Trial Attorney, Tax Division, Washington, D.C., for Internal Revenue Service.

### OPINION ON APPLICATION OF 26 U.S.C. § 6672

JUDITH H. WIZMUR, Chief Judge.

In this adversary proceeding, in Count Two of the complaint, the debtor, John F. Grillo, challenges the validity of civil penalties assessed against him by the Internal Revenue Service ("IRS").[1] The assess-

---

1. Count One of the debtors' complaint sought to invalidate the 1991 and 1995 mortgages on their personal residence and is the subject of a separate opinion.

ment is based upon the IRS's contention that the debtor is a "responsible person", for purposes of 26 U.S.C. § 6672, who willfully failed to pay over federal employment taxes owed by two corporations, the Grillo Electric Company and the G.E.C. Lighting Supply Corporation. For the reasons expressed below, the debtor's request for an order expunging the civil penalty claims asserted by the IRS is denied.

## FACTS AND PROCEDURAL HISTORY

The debtor, John F. Grillo, is a licensed electrical contractor. In 1970, he started an electrical contracting company called the Grillo Electric Company ("Grillo Electric"). The company was engaged in commercial and residential electrical contracting, including new construction and renovation work. His two sons, John A. Grillo and Kelly Grillo, joined the business sometime during the 1970s and 1980s, respectively, directly from high school and college.

The debtor and his two sons testified at trial that after 1988, the debtor gradually ceased his management role and became more of an advisor to his sons, who actively took over the businesses. He came in regularly and had his assigned desk, but spent most of his time in the field checking ongoing jobs. His two sons consulted him on various projects, but did not directly discuss the company's financial concerns with him. Both sons testified that it was their responsibility to handle the finances, and that it was not their father's responsibility. In 1994, the debtor, his wife and their two sons formed a second company,

G.E.C. Lighting Supply Company ("G.E.C."). The new company sold lighting fixtures and electrical supplies directly to other contractors and to retail customers.

The debtor and his wife owned 98% of the shares of both Grillo Electric and G.E.C.[2] During the period in question, Marie Grillo was not involved in the business. The debtor was president of Grillo Electric, and vice president of G.E.C. He had full check-signing authority, access to the records of both companies, and spent most of his time in the field on specific jobs. Until 1989, the debtor managed Grillo Electric and was responsible for the hiring, firing and managing of employees, directing the payment of bills, negotiating large purchases, managing corporate bank accounts, authorizing payroll checks, and determining the company's financial policy. From 1989 until May 1998, when both companies filed bankruptcy petitions, the debtor's two sons took over the financial management of the company and made all of the financial decisions.[3] The debtor acknowledged that while he was still technically authorized to conduct the business of the two companies, he chose not to do so after his sons took over the day to day responsibilities to manage the businesses.

Sometime during the early 1990's, the two companies experienced a downturn in business, including the loss of several potentially high paying jobs. During the fall of 1996, the debtor became aware that both companies had failed to make substantial payments to the IRS on account of

**2.** Although there was some variation in the testimony and documents offered on the issue of the extent to which the debtor owned shares in the two corporations, the debtor confirmed in his testimony that he and his wife together owned 98% of the shares of each company while each of their sons owned

a 1% share. The 1995 K–1 portion of the debtor's tax return reflects that his wife Marie owned 51% of the shares of G.E.C., while he owned 47% of the shares.

**3.** John A. Grillo became the vice president of Grillo Electric and the president of G.E.C.

taxes withheld from employees.[4] Section 941 taxes were due and unpaid for the following periods:

| Grillo Electric Company: | 1991—4th quarter |
| | 1992—2nd and 4th quarter |
| | 1994—2nd quarter |
| | 1995—2nd, 3rd and 4th quarter |
| G.E.C. Lighting Supply Company: | 1995—3rd and 4th quarter |
| | 1996—1st, 2nd and 3rd quarter |

Until the fall of 1996, the debtor was occasionally made aware of the companies' financial difficulties, but he claims that he did not know about the growing tax delinquency. During this same time period, the debtor maintains that he did not exercise any financial control over either company. In December 1996, the debtor and his sons met with the IRS and completed interviews regarding the trust fund recovery penalty or personal liability for excise tax.

On May 15, 1998 and on February 15, 1999, the debtor, John F. Grillo, and his two sons were each assessed for the unpaid trust fund taxes in the amount of $84,496.23 for Grillo Electric and $127,603.36 for G.E.C. A notice of federal tax lien was filed on March 13, 2000. Each of the debtor's sons entered into separate settlements with the IRS on their respective personal liability for the 941 taxes.[5]

John F. Grillo and Marie Grillo filed a joint Chapter 13 case on April 16, 2004. The IRS filed a proof of claim on June 28, 2004, as amended on July 1, 2004, asserting that the debtors were liable for unpaid federal income taxes, and as is relevant here, that John F. Grillo was liable for the trust fund taxes. The debtors' case was later converted to Chapter 11. On September 20, 2004, the debtors filed this adversary complaint seeking in Count Two an order expunging the civil penalty claims asserted by the IRS. The debtor, John F. Grillo, contends that he is not a "responsible party" for purposes of section 6672. He insists that once his sons came into the business, he turned over the financial control of the two companies to them. His two sons were given full authority to make all financial decisions for the companies, and he was not involved in any way in making those decisions.

On January 24, 2005, the debtors filed a motion for summary judgment. The motion was withdrawn on May 9, 2005, and this matter was tried in court on July 6, 2005.

### DISCUSSION

Pursuant to the Internal Revenue Code, employers are required to withhold from the wages of their employees income and social security taxes, and to hold such taxes in trust for the United States pursuant to 26 U.S.C. §§ 3102, 3402, and 7501. Section 6672 provides in part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

---

**4.** John A. Grillo testified that they started "towards '96 or so" to discuss the nonpayment of taxes, but admitted that he would "only be guessing" as to the actual first time they discussed taxes. Kelly testified that his father was not aware of the tax problem prior to the end of 1996, but they did discuss it sometime before the IRS interview in December 1996.

**5.** John A. Grillo settled for $42,232.00 and Kelly Grillo for $12,000.00.

26 U.S.C. § 6672. For purposes of section 6672, a "person" is defined as "an officer or employee of a corporation ... under a duty to perform the act in respect to which the violation occurs." 26 U.S.C. § 6671(b). This definition has been broadly interpreted to encompass anyone who is " 'required to collect, truthfully account for or pay over any tax due to the United States.' " *Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir.1994) (quoting *United States v. Carrigan*, 31 F.3d 130, 133 (3d Cir.1994)). Once the IRS makes an assessment against a party pursuant to 26 U.S.C. § 6672, the burden of going forward to show that the assessment was incorrect and that the debtor was not a "responsible person" or that he did not willfully fail to pay the outstanding taxes shifts to the debtor. *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir.1992); *United States v. Vespe*, 868 F.2d 1328, 1331 (3d Cir.1989).

 The test to establish liability under section 6672 can be reduced to two elements: "(1) the individual must be a 'responsible person,' and (2) his or her failure to pay the tax must be 'willful.' " *United States v. Mitchell*, 82 Fed.Appx. 781, 785 (3d Cir.2003). *See also Greenberg v. United States*, 46 F.3d 239, 242 (3d Cir.1994). For assessment purposes, there can be more than one "responsible person" in a company. *Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 926 (3d Cir.1990). *See also United States v. Vespe*, 868 F.2d 1328, 1332 (3d Cir.1989).

 Whether someone qualifies as a responsible person "is a matter of status, duty or authority, not knowledge." *Id.* at 927. *See also United States v. Carrigan*, 31 F.3d 130, 133 (3d Cir.1994). To qualify as a "responsible person", the person must "have significant control over the corporation's finances," although "exclusive control is not necessary." *Brounstein*, 979 F.2d at 954. The test does not require

that the "individual have the final word on which creditors should be paid in order to be subject to liability under section 6672," but instead looks to whether the person "has significant control over the disbursement of corporate funds." *Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir. 1994).

Courts addressing the question of "responsibility" often focus on a seven factor test that considers:

(1) the contents of the corporate bylaws;

(2) the ability to sign checks on the company's bank account;

(3) the signature on the corporation's tax returns;

(4) the payment of other creditors;

(5) the identity of officers, directors and principal stockholders in the corporation;

(6) the identity of individuals in charge of hiring and discharging employees; and

(7) the identity of individuals in charge of the firm's financial affairs.

*Mitchell*, 82 Fed.Appx. at 785 (citing to *Brounstein v. United States*, 979 F.2d 952, 954–55 (3d Cir.1992)). *See also Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir.1994); *Carrigan*, 31 F.3d at 133.

Here, we do not have a copy of the corporate bylaws, but the record is clear that while the debtor had the authority to act in all matters involving the company, the responsibility to conduct the company's business, including its financial matters, rested with the debtor's two sons. The debtor was a signatory on both companies' bank accounts, and he signed checks on occasion. The debtor did not sign the company tax returns, but he did have the authority to do so. The debtor was a significant owner of both companies, holding 98% of the stock in each company along with his wife, who played a silent role. He

was the president of Grillo Electric and the vice president of G.E.C. He had full access to all of the records, but did not generally review those records. After his sons took over the operations of the company around 1988 or 1989, he came to the office regularly, but did not have any office duties. He worked primarily in the field on specific projects, reviewing the electrical work and meeting with inspectors. Until the fall of 1996, when the debtor became aware of the outstanding employee withholding tax liabilities due to the IRS, the debtor had no responsibility to pay bills or to decide which creditors should be paid. He did not negotiate contracts, and had no contact with creditors. Generally, as president of Grillo Electric and vice-president of GEC, as the founder of the companies and substantial shareholder, and as the father of the day-to-day managers, the debtor had full authority to act in all phases of company operations, but limited his actions to field work after 1989.

■ The issue is whether status and authority, without actual responsibility, are sufficient to impose responsible person status on the debtor, particularly where the authority is available, but not routinely exercised. The quotation most often relied upon by the Third Circuit Court of Appeals to describe responsibility in the context of section 6672, as noted above, is stated in the disjunctive, that "responsibility is a matter of status, duty or authority, not knowledge." *Greenberg,* 46 F.3d at 244, *Brounstein,* 979 F.2d at 954 (citation omitted), *Quattrone Accountants,* 895 F.2d at 927. Here, the debtor qualifies as a "person" under section 6671(b) because he was an officer and an employee of the two corporations which owed withholding taxes, and was under a duty thereby to insure

that the taxes were paid, even if he chose not to fulfill that duty, or to delegate that duty to his sons. He is a responsible person under section 6672 because as president and majority shareholder,[6] with full check writing opportunity and full access to the books and records of the company, he was required "to collect, truthfully account for and pay over" withholding taxes. Although he chose not to exercise control, he had the opportunity to exercise substantial control over the company's financial affairs.

To be distinguished here is the *Carrigan* case, where the Court of Appeals reversed and remanded the grant of summary judgment by the trial court because a genuine issue of material fact existed concerning whether the corporate officer had "significant control" over the corporation's financial affairs. In *Carrigan,* the president of the company had signature authority to sign corporate checks, which he exercised on one occasion, and was responsible to raise capital for the company. He was not a shareholder, had no independent authority, and had no access to the records and checkbooks of the company.

In contrast here, the debtor founded the company, and allowed his sons to assume positions of authority in the company. Both sons readily acknowledged that although they took responsibility for managing the affairs of the two companies, their father never lost the authority to act in any capacity pertaining to the companies. The debtor is a responsible person not only because of his status as president, but because he always retained the authority to control the company, even if he did not exercise that authority.

---

6. Although the debtor and his wife together owned 98% of the shares of each company, she was not involved in the business of either company during the time frame in question in any way.

In light of these circumstances, I conclude that the debtor must be designated as a "responsible person" for purposes of section 6672.

■■■■■ The second part of the test under section 6672 requires that the responsible party's failure to pay must have been "willful." In the context of section 6672(a), "willfulness is 'a voluntary, conscious and intentional decision to prefer other creditors over the Government.'" *Brounstein*, 979 F.2d at 955–56 (quoting *Quattrone*, 895 F.2d at 928). *See also Greenberg*, 46 F.3d at 244 ("Any payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the government, constitutes a willful failure to pay taxes."). "A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid." *Brounstein*, 979 F.2d at 956. *See also Greenberg*, 46 F.3d at 244 ("In order for the failure to turn over withholding taxes to be willful, a responsible person need only know that the taxes are due or act in reckless disregard of this fact when he fails to remit to IRS."); *Carrigan*, 31 F.3d at 134. In addition, courts have found that reckless disregard includes the "failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid." *Greenberg*, 46 F.3d at 244 (quoting *Morgan v. United States*, 937 F.2d 281, 286 (5th Cir.1991)). Simply put, the reckless disregard standard is satisfied where the party "'(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily.'" *Carrigan*, 31 F.3d at 134 (quoting *Vespe*, 868 F.2d at 1335). There is no requirement that the party have acted with an evil motive or bad purpose. *Greenberg*, 46 F.3d at 244.

■■■■■ The debtor and his two sons had actual knowledge in the fall of 1996 that trust fund taxes for various quarters from 1991 to 1996 had not been paid by the two companies. The debtor did not learn of the debt until after the payments were missed. Nonetheless, after he was so informed, he continued to work, he continued to receive his own paycheck, and he acknowledged that other employees continued to be paid their salaries. The companies filed Chapter 11 cases in 1998, and continued to operate for a period of time after the filing, paying various operational expenses in the normal course of business. The payment of other creditors, including the payment of net wages to the corporation's employees, by the debtor and his sons after all three were aware of the delinquencies to the government constituted a willful failure to pay taxes under section 672. *Greenberg*, 46 F.3d at 244. "It is no defense that the corporation was in financial distress and that the funds were spent to keep the corporation in business with an expectation that sufficient revenue would later become available to pay the United States." *Id.* The record supports the fact that after the debtor became aware of the trust fund tax delinquencies of the two corporations, the companies, which he had the authority to control, "preferred subsequent creditors over the United States". *Tiffany v. United States*, 228 F.Supp. 700, 702 (D.N.J.1963). "[K]nowing at all times [after December 1996] the obligation to pay such taxes, [the debtor's] failure to pay was a voluntary, conscious and intentional act and therefore 'willful' within the meaning of 26 U.S.C. § 6672." *Id. See also United States v. Vespe*, 868 F.2d 1328, 1335 (3d Cir.1989) ("One who was a responsible person when taxes were incurred, and who only later

becomes aware that they were not paid, acts willfully by then paying other creditors in preference to the United States, even if the money specifically withheld has been dissipated."); *Davis v. United States,* 961 F.2d 867, 876–77 (9th Cir.1992), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993).

On this record, I conclude that the debtor was a "responsible person" who willfully failed to pay over trust fund taxes due. Debtor's request for an order expunging the civil penalty claims asserted by the IRS is therefore denied.

Counsel for the IRS shall submit an order in conformance with this opinion.