Michele S. TEDESCO, Plaintiff

v.

UNITED STATES of America, Defendant/Third Party Plaintiff

v.

Ricky Tedesco, Third Party Defendant.

No. 4:CV–08–2001.

United States District Court, M.D. Pennsylvania.

Feb. 4, 2010.

Elliott B. Weiss, Philip Sunderland, Elliott B. Weiss & Associates, Williamsport, PA, for Plaintiff.

Geoffrey J. Klimas, Nicole M. Elliott, Washington, DC, for Defendant/Third Party Plaintiff.

## *ORDER*

MALCOLM MUIR, District Judge.

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 4, 2008, Plaintiff Michele S. Tedesco initiated this action by filing a complaint. The Defendant is the United States of America. The fundamental issue in this case is whether Michele S. Tedesco (hereinafter at times "Tedesco") is liable for unpaid and overdue federal employment taxes that should have been withheld from employees' wages by the business known as R & M Tedesco Contracting, Inc. The basis for the tax liability is in the Internal Revenue Code provision found at 26 U.S.C. § 6672. The taxes themselves are commonly referred to as "trust fund taxes" because they are income and social security taxes which employers are obliged to withhold from employees' wages and hold in trust for the United States.

On February 17, 2009, the Government filed an answer and a counterclaim. In its counterclaim, the Government contends

that Michele S. Tedesco is responsible for the entire amount of the taxes originally assessed against her.

By order dated March 16, 2009, we granted the Government's motion to file a third party complaint naming Ricky Tedesco as the third party defendant. The Government filed its third party complaint on March 26, 2009. The claims and issues relating to Ricky Tedesco have been resolved by entry of a default judgment against him on January 29, 2010.

Discovery in this case closed on October 15, 2009.

On November 30, 2009, the remaining parties filed cross motions for summary judgment and supporting briefs. On December 16, 2009, Tedesco filed a brief opposing the Government's motion. On December 17, 2009, the Government filed its brief opposing Tedesco's motion. On December 31, 2009, the Government filed a reply brief. The time allowed for Tedesco to file a reply brief expired on January 7, 2010, and to this date no such brief has been filed.

On January 10, 2010, we issued an order advising the parties of our view that the evidentiary record was incomplete because in her briefs Tedesco referenced portions of deposition transcripts which had not been filed with the court. The order required Tedesco to file a statement of material facts in support of her motion for summary judgment and the transcripts from the depositions of herself, Kim Boyer, and Roger McKee.

Tedesco timely filed those documents on January 26, 2010, thereby ripening the two dispositive motions for disposition.

Summary judgment is appropriate only when there is no genuine issue of material fact which is unresolved and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact-finder could draw from them. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982). "When a motion for summary judgment is made and supported as provided in ... [Rule 56], an adverse party may not rest upon mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325, 106 S.Ct. 2548.

Rule 56 provides that, where such a motion is made and properly supported, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of its case that a reasonable jury could find in its favor. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Because summary judgment is a severe remedy, the Court should resolve any doubt about the existence of genuine issues of fact against the moving party. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981).

The United States Supreme Court has stated that in motions for summary judg-

ment a material fact is one which might affect the outcome of the suit under relevant substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court also stated in *Anderson* that a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When addressing such a motion, our inquiry focuses on "whether *the evidence* presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis added).

As summarized by the Advisory Committee On Civil Rules, "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee note to 1963 Amendment.

The same standards govern cross-motions for summary judgment. *Continental Ins. Co. v. Kubek*, 86 F.Supp.2d 503, 505 n. 2 (E.D.Pa.2000)(Katz, J.)(citing *Appelmans v. Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987)). When considering such cross-motions "each motion must be considered separately, and each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Nolen v. Paul Revere Life Ins. Co.*, 32 F.Supp.2d 211, 213 (E.D.Pa.1998)(Robreno, J.).

We next set forth the undisputed material facts supported by the evidentiary record.

Michele S. Tedesco has a bachelor's degree in occupational therapy, a master's degree in education, and (as of the date of her deposition on October 19, 2009) a cosmetology license. She works as a therapist at a hospital and a nursing home. At all relevant times she has worked a combined total of between 40 and 60 hours each week at those jobs.

Prior to the creation of R & M Tedesco Contracting (hereinafter "the Corporation"), Tedesco and her then-husband Ricky Tedesco jointly purchased, renovated, and rented homes. In that business, Tedesco was actively involved in selecting houses to purchase, financing the purchases, and deciding how the houses should be renovated. Houses purchased as rental properties by the Tedescos were held as individual investments and no separate business was ever created in connection with those activities.

When other individuals saw the results of the renovations, some inquired as to who had done the work. Ricky Tedesco saw an opportunity to start his own construction business. He discussed it with his wife and she agreed with him because at that time, June of 2004, Ricky Tedesco did not have steady employment.

A corporation was created to operate the construction company. The business was called R & M Tedesco Contracting, Inc., and its original location was 2010 Northway Road. No copies of documents filed with the Pennsylvania Department of State when the incorporation occurred have been provided to the court. However, information retrieved from that state agency's website indicates that Ricky Ted-

esco was the corporation's president, and Michael Tedesco, one of Ricky Tedesco's cousins, was both the secretary and treasurer. No corporate by-laws were ever enacted.

Michael Tedesco was listed as a fifty-percent shareholder of the corporation on an Internal Revenue Service document entitled "Election by a Small Business Corporation" dated July 28, 2004. Ricky Tedesco is identified as the owner of the remaining fifty percent. Michele S. Tedesco is identified on that form as a zero percent shareholder. The form requires that a "shareholder's spouse having a community property interest in the corporation's stock" be identified.

When the corporation was formed Michele S. Tedesco had no formal role in it whatsoever. From its inception, however, she made suggestions as to how the office should be run (i.e., that a professional appearance be maintained in the office and that activities such as drinking alcohol and smoking be prohibited there).

For funding the corporation initially relied upon a line of credit provided by Sovereign Bank and secured by the Tedescos' home. That line of credit had also been the funding source for purchasing and renovating the Tedescos' rental properties.

At some point not specified in the record, Ricky Tedesco opened a bank account for R & M Tedesco Contracting, Inc., at Williamsport National Bank, which later became known as Susquehanna Bank. Michele S. Tedesco had no involvement with or control over that account.

In April of 2005 the Tedescos sold one of their rental properties. The net proceeds from that sale amounted to $50,000. Michele S. Tedesco did not attend the closing on that transaction, and she relied upon her husband to deposit the $50,000 into their joint Sovereign Bank account. In or about the middle of May of that year, Michele S. Tedesco stopped at Sovereign Bank to determine the account balance there. She then learned for the first time that Ricky Tedesco had not deposited the $50,000 and had written other checks on the account to fund the activities of R & M Tedesco Contracting, Inc. Ricky Tedesco had previously assured Michelle Tedesco that the Sovereign Bank account would not be used to pay the corporation's liabilities and debts. After Ricky Tedesco failed to keep his promise to pay back a substantial portion of the $50,000 from the sale of the rental property, Michele S. Tedesco insisted that R & M Tedesco Contracting, Inc., hire an accountant to handle that business's finances.

Michele S. Tedesco played a significant role in persuading the corporation to hire an accountant and in deciding that Roger McKee was the best candidate interviewed for the position. As noted by Michele S. Tedesco, "at that point in time [Ricky Tedesco] was trying to appease [her] to show that he was going to be on the up and up with the money." (Deposition of Michele S. Tedesco, p. 21)[1]

R & M Tedesco Contracting, Inc., hired McKee to be its accountant in June or July of 2005. McKee almost immediately brought the corporation's tax debt to the Internal Revenue Service to everyone's attention at R & M Tedesco Contracting, Inc. Shortly thereafter Ricky Tedesco entered a rehabilitation program for substance abuse. He completed that program in September of 2005. Around that same time Michael Tedesco left the business.

Although Michele S. Tedesco never approved of Michael Tedesco's employment

---

1. Michele S. Tedesco played a significant role in the hiring of only two other employees at R & M Tedesco Contracting, Inc., her father and one other individual.

at R & M Tedesco Contracting, Inc., he remained at the business until September or October of 2005. Michele S. Tedesco had suspected that Ricky and Michael Tedesco were using illicit drugs in the office.

The parties refer in certain depositions to a written agreement confirming the terms of Michael Tedesco's departure from R & M Tedesco Contracting, Inc.; two of the purported terms of the agreement were that Michael Tedesco would not be liable for any of the corporation's debts, and that Michael Tedesco did not owe anything to the corporation. The document has not been produced to the court.

Michael Tedesco's departure is significant because he had been identified as the corporation's secretary and treasurer. Prior to Michael Tedesco's departure, there is no indication that Michele S. Tedesco had any significant interest in or authority over the finances of R & M Tedesco Contracting, Inc.

At that time Kim Boyer was the project manager at R & M Tedesco Contracting, Inc., and worked in the main office every workday.

Michele S. Tedesco had regular conversations with Ricky Tedesco and McKee about the corporation's finances. She asked McKee to prioritize certain bills by paying them first, and at times she told McKee not to pay Ricky Tedesco until after the payment of other bills. McKee obeyed her instructions to some extent, and at times reduced or withheld Ricky Tedesco's paycheck.

When the corporation needed additional funds to cover payroll, on one occasion Michele S. Tedesco and Boyer picked up funds from Rennie Rodarmel. Rodarmel had at one point been a shareholder in the corporation.

In October of 2005 Ricky Tedesco opened a checking account for R & M Tedesco Contracting, Inc., at Woodlands Bank. In connection with the opening of that account, it was decided that Boyer and Michele S. Tedesco would be the only ones with authority to sign checks drawn from the Woodlands Bank account. That event marked the first time that Michele S. Tedesco had the authority to sign checks drawn from a corporate account. The primary reason for not providing Ricky Tedesco with such authority was his demonstrated inability to handle the company's finances.

Michele S. Tedesco had the authority to sign checks payable to herself, her husband, and her children, drawn on that corporate account.

In late December of 2005, Ricky Tedesco obtained a business loan from Woodlands Bank in the amount of $150,000 for R & M Tedesco Contracting, Inc. Ricky Tedesco obtained that loan because R & M Tedesco Contracting, Inc.'s, finances were "in disarray." That loan was obtained by refinancing the Tedescos' home and $100,000 of the loan was used to pay off the prior loan on their home at Sovereign Bank.

Michele S. Tedesco does not know how the remaining $50,000 was spent. One reason that loan was obtained was to pay the tax liabilities to the Internal Revenue Service at issue in this case. Michele S. Tedesco did not ensure that the loan proceeds were used to pay the delinquent federal employment taxes and she does not know how that money was spent.

Michele S. Tedesco personally guaranteed a $50,000.00 loan to the Corporation and checked on the status of the Corporation's loan payments every week. Michelle S. Tedesco directly loaned at least $13,504.00 to the Corporation over time.

After becoming aware of the accrued unpaid federal employment tax liabilities, Michelle S. Tedesco signed checks drawn from the Corporation's account to pay other creditors of the corporation, including herself, her husband, and her children.

Michele S. Tedesco knew that Ricky Tedesco had commingled personal and corporate funds, and suspected that some of the corporation's funds had been used for items not related to the business. She knew that federal taxes had not been paid in the past.

The corporation did not pay its federal employment tax liabilities for the seven quarters that ended between December 31, 2004, and June 30, 2006. The only step Michele S. Tedesco took to ensure payment of the corporation's federal tax obligation was to tell McKee and Ricky Tedesco to pay them. Every quarterly tax return submitted to the Internal Revenue Service by R & M Tedesco Contracting, Inc., was signed by Ricky Tedesco.

On or about December 24, 2007, the Commissioner of the Internal Revenue Service issued a Trust Fund Recovery Assessment against Michele S. Tedesco for the following periods and amounts:

| Period Ended | Amount Assessed |
| --- | --- |
| 12/31/2004 | $ 2,544.36 |
| 3/31/2005 | $ 3,646.11 |
| 6/30/2005 | $12,237.74 |
| 9/30/2005 | $14,164.60 |
| 12/31/2005 | $ 2,831.53 |
| 3/31/2006 | $ 2,362.25 |
| 6/30/2006 | $ 1,287.72 |

On or about January 22, 2008, Michele S. Tedesco paid the Internal Revenue Service the following amounts under protest with respect to the Trust Fund Recovery Penalties assessed against her:

| Period Ended | Amount Assessed |
| --- | --- |
| 12/31/2004 | $ 255.44 |
| 3/31/2005 | $ 364.61 |
| 6/30/2005 | $ 1,223.77 |
| 9/30/2005 | $ 1,416.46 |
| 12/31/2005 | $ 283.15 |
| 3/31/2006 | $ 236.23 |
| 6/30/2006 | $ 128.71 |

Michele S. Tedesco also timely filed claims for refunds on the grounds that she was not a "responsible party," but was merely a nominal officer unaware of her status within the corporation's structure. On or about March 18, 2008, the Internal Revenue Service denied her claim for a refund. Michele S. Tedesco filed her complaint in this action seeking a judgment that she is not liable for any of the taxes, which would entitle her to a refund of the amounts she paid to the Internal Revenue Service.

Based on the undisputed material facts set forth above, each party contends that she or it is entitled to summary judgment. In its motion for relief, the Government seeks a judgment on its counterclaim establishing Michele S. Tedesco's liability for all of the assessed penalty.

The statute creating the tax liability at issue here is 26 U.S.C.A. § 6672 and it provides in relevant part as follows:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C.A. § 6672(a).

The Court of Appeals for the Third Circuit has observed that

Congress, through section 6672 of the Internal Revenue Code, enacted the stringent measure of imposing personal liability on those individuals whose control over the financial affairs of a busi-

ness entity requires them to collect and pay over taxes withheld from the employees. *See Slodov,* 436 U.S. at 244–45, 98 S.Ct. at 1784; *Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921, 927 (3d Cir.1990). The provision making a responsible person liable for an amount equal to the trust fund taxes that were not paid over to the government establishes an alternative source of collection for the government to make the public fisc whole. . . .

Although denominated a "penalty" in the statute, the liability imposed under section 6672 is not penal in nature, but rather is a means of ensuring that withholding taxes are paid.

*U.S. v. Pepperman,* 976 F.2d 123, 127 (3d Cir.1992). We further note that § 6672 imposes liability on "[a]ny person required to collect, truthfully account for, and pay over" taxes who willfully fails to do so. 26 U.S.C. § 6672; *United States v. Vespe,* 868 F.2d 1328, 1332 (3d Cir. 1989). There can be more than one responsible person for a given employer. *Vespe,* 868 F.2d at 1332. That another person also may be liable under Section 6672 does not affect the liability of the person presently subject to suit. *Commonwealth National Bank of Dallas v. United States,* 665 F.2d 743 (5th Cir. 1982). Section 6672 "imposes joint and several liability on each responsible person, and each responsible person can be held for the total amount of withholding not paid." *Sinder v. United States,* 655 F.2d 729, 732 (6th Cir.1981).

*Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921, 926 (3d Cir.1990).

The Court of Appeals for the Third Circuit in *Quattrone Accountants, Inc.* stated that

[t]he question of [a party's] liability under Section 6672 presents two issues: first, whether [the party] is a responsible person; second, whether [the party] willfully failed to collect or truthfully account for and pay over such tax. . . .

A responsible person is a person required to collect, truthfully account for or pay over any tax. *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Responsibility is a matter of status, duty or authority, not knowledge. *Mazo v. United States,* 591 F.2d 1151 (5th Cir.1979). The responsible person need not be a corporate officer. *Adams v. United States,* 504 F.2d 73 (7th Cir.1974). A person is responsible if the person has significant, though not necessarily exclusive, control over the employer's finances. *United States v. Vespe,* 868 F.2d 1328, 1332 (3d Cir. 1989). A person has significant control if he has the final or significant word over which bills or creditors get paid. *Commonwealth National Bank of Dallas v. United States,* 665 F.2d 743, 757 (5th Cir.1982).

*Id.*

■ At this point of our analysis we note that the parties have framed Michele S. Tedesco's potential liability here as an "all or nothing" proposition, meaning that the only two possible outcomes are that she is liable for 1) the entire amount assessed against her for the taxes which should have been collected in all seven quarters, or 2) absolutely nothing. We do not think that the facts in this case justify such approach, or that the governing law requires it.

The undisputed material facts supported by the evidence of record establish that Michele S. Tedesco's role at R & M Tedesco Contracting, Inc., evolved and grew with the passage of time. An understanding of that evolution is critical for determining when, if ever, Michele S. Tedesco

became a 'responsible person' for the purposes of § 6672 liability.

When the business began operating there is no indication that she had any involvement in or authority over the corporation's finances. Such interest and authority were first prompted by her husband's failure to deposit in their joint account a substantial portion of the $50,000 in proceeds realized from the sale of one of their rental properties. At that point, in May of 2005, Michelle Tedesco insisted that R & M Tedesco Contracting, Inc., hire an accountant to handle the business's finances. She was instrumental in hiring Roger McKee, the accountant, in July of 2005.

Two significant events occurred in September and October of 2005. The first is that Michael Tedesco, who up to that point had been identified as the corporation's secretary and treasurer, left the business. The second is that when the corporation opened a checking account at Woodlands Bank, Michele S. Tedesco, for the first time, was given the authority to sign corporate checks. The document memorializing that authority is dated October 3, 2005. The title "Corporate Secretary" appears next to Michelle Tedesco's signature on that document.

Based on the totality of the circumstances in this case, we are of the view that Michele S. Tedesco first became a responsible party for the purposes of § 6672 liability on October 3, 2005. In reaching that conclusion we acknowledge her prior involvement in various aspects of the business (i.e., making requests concerning the conduct of employees in the office, exercising some discretion in hiring and firing a very limited number of employees, discussing the corporation's finances with her husband, etc.). However, before October 3, 2005, there is no evidence to support the conclusion that she

exercised significant (if any) control *over the corporation's finances,* which is the area of control to consider in determining whether she was (and when she became) a responsible party.

In light of our conclusion that Tedesco was not a responsible party prior to October 3, 2005, she is not liable for the penalty at issue here for the first four quarters at issue. Those quarters cover the periods ending December 31, 2004, March 31, 2005, June 30, 2005, and September 30, 2005. We will grant Tedesco's motion for summary judgment and deny the Government's motion for summary judgment with respect to those quarters.

The remaining inquiry is whether, in light of the fact that Tedesco became a responsible party on October 3, 2005, she "willfully failed to collect or truthfully account for and pay over [the] tax" for the quarters ending December 31, 2005, March 31, 2005, and June 30, 2006.

■ As stated by the Court of Appeals for the Third Circuit,

[t]he fact that [a party] is a responsible person does not end our inquiry because IRS may impose section 6672 liability only if a responsible person "willfully" fails to collect, account for or pay over the withheld taxes. 26 U.S.C.A. § 6672(a). We have stated, "[u]nder section 6672(a), willfulness is 'a voluntary, conscious and intentional decision to prefer other creditors over the Government.' A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid." . . . In order for the failure to turn over withholding taxes to be willful, a responsible person need only know that the taxes are due or act in reckless disregard of this fact when he fails to remit

to IRS. "Reckless disregard includes failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid." ...
The taxpayer need not act with an evil motive or bad purpose for his action or inaction to be willful.... Any payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes.

*Greenberg v. U.S.*, 46 F.3d 239, 244 (3d Cir.1994) (citations omitted). Our attention is drawn to the summary conclusion in the quotation that 'a responsible person need only know that the taxes are due or act in reckless disregard of this fact when he fails to remit to IRS.'

█ When he was hired in July of 2005, Roger McKee was alarmed by the fact that the taxes at issue here had not been paid and he conveyed that alarm to Ricky and Michele S. Tedesco. As of that point, at the latest, Michele S. Tedesco was aware of the unpaid taxes. After becoming a 'responsible person' in October of 2005, the undisputed facts show that Michele S. Tedesco failed to take the steps necessary to pay those taxes.

While repeatedly requesting that the taxes be paid, she did in fact sign checks from the corporate account to pay other creditors. As noted by the court in *Greenberg*, "[a]ny payment to other creditors, ..., constitutes a willful failure to pay taxes." *Id.* Her intentions notwithstanding, Michele S. Tedesco's actions meet the definition of a willful failure to collect, account for or pay over the withheld taxes.

With respect to the quarters ending December 31, 2005, March 31, 2005, and June 30, 2006, we will grant the Government's motion for summary judgment and deny Tedesco's motion for that same relief.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The Plaintiffs' motion (Document 47) for summary judgment is granted in part and denied in part as provided in paragraphs 3 and 4 of this order.

2. The Defendant's motion (Document 49) for summary judgment is granted in part and denied in part as provided in paragraphs 3 and 4 of this order.

3. Plaintiff is not liable for the portion of the Trust Fund Recovery Penalty Assessment which is based on the four quarters ending December 31, 2004, March 31, 2005, June 30, 2005, and September 30, 2005, referenced in her complaint. Tedesco is entitled to a refund in the amount of $3,260.28, which she paid to the Internal Revenue Service for those quarters.

4. Plaintiff is liable for the portion of the Trust Fund Recovery Penalty Assessment which is based on the three quarters ending December 31, 2005, March 31, 2006, and June 30, 2006, referenced in her complaint. Tedesco shall pay the penalty of $648.09 to the Internal Revenue Service for those quarters.

5. The Clerk of Court shall close this case.